# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00367-CR

**Andrew Ramirez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. 2012365, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## O P I N I O N

Following the district court=s denial of his motion to suppress, appellant Andrew Ramirez pleaded guilty to felony possession of marihuana. *See* Tex. Health & Safety Code Ann. ' 481.121(b)(3) (West Supp. 2003). The district court sentenced appellant to six months in a state-jail facility. Appellant had moved the court to suppress both an oral statement he made to police and the marihuana obtained when a police officer searched, without a warrant or consent, a closed ice cooler in the appellant=s garage. Appellant appeals only the district court=s denial of his motion to suppress. We will reverse and remand.

## BACKGROUND

On the afternoon of November 21, 2001, the Austin Police Department (AAPD@) received a call from a neighbor of appellant, complaining that she was Atired of [appellant] selling mari[h]uana out of his garage.@ APD Officer Chris Sobieszczyk responded to the call. Sobieszczyk first approached the neighbor=s house, speaking with the neighbor for approximately ten to fifteen minutes. Then Sobieszczyk knocked on the front door of appellant=s residence, and a young boy answered. Sobieszczyk asked whether an adult was present, and the boy directed him to the garage. When Sobieszczyk reached the garage, he knocked on the garage=s closed door. From inside, individuals shouted profanities at Sobieszczyk. The officer then identified himself as AAustin police.@ Sobieszczyk heard shuffling, and a few moments later, appellant came to the garage door and stepped outside, closing the door behind him. While the door was open, Sobieszczyk noticed a scale with marihuana residue and seeds on it, a set of finger scales, and a large green pipe on a table approximately two feet inside the garage. Sobieszczyk detected a strong odor of fresh marihuana and noticed plastic baggies and rolling papers on the floor. Outside of the garage, in a garbage can, he saw a brick-sized cellophane wrapper containing marihuana residue.

Sobieszczyk talked with appellant and learned that appellant owned the property. During the discussion, a second individual, Pedro Reynosa, left the garage, leaving the door partially open behind him. Sobieszczyk had been at the scene of an aggravated assault involving a shooting the prior week. He knew Reynosa Ahad been handled for weapons before,@ and believed that either Reynosa or one of Reynosa=s brothers had been involved in the shooting. Sobieszczyk was concerned that Reynosa or appellant might possess weapons.

Both appellant and Reynosa acted nervously, hiding their hands either behind their backs or inside their clothing. Appellant, who wore a gray sweatshirt with a large front pocket, held his hands inside the pocket. Because it was dark behind the garage and because he believed Reynosa might possess weapons, Sobieszczyk called for a backup officer before conducting a safety pat down of appellant and Reynosa. Sobieszczyk continued to talk with the two men until Officer Kenneth Murphy arrived.

Murphy approached Reynosa and requested his permission to pat down Reynosa for weapons. Reynosa told Murphy that he had a knife. During his pat down of Reynosa, Murphy found a double-edged stiletto and a small plastic bag of marihuana in a pocket of Reynosa=s pants. Reynosa was immediately placed under arrest and moved away from the garage doorway.

After Murphy secured Reynosa, Sobieszczyk patted down appellant. As he began the pat down, Sobieszczyk told appellant, A[Y]ou are being detained,@ and placed him in handcuffs.[1] Sobieszczyk also told appellant that he could see drug paraphernalia and drug residue in the garage. Sobieszczyk then asked appellant, AIs there anything else I=m going to find in there that=s illegal, any more mari[h]uana?@ Appellant hesitated, and Sobieszczyk moved appellant closer to Murphy and Reynosa and stepped into the garage. Appellant then stated that he Aguess[ed] there=s some pot in the red cooler.@ Sobieszczyk testified that his main intent for entering the garage was to seize the paraphernalia and to ensure that no other individuals remained inside the garage. He seized the pipe and the cooler. Although the record is not clear as to the precise sequence of events, at the suppression hearing, the State suggested that, based on appellant=s admission, Sobieszczyk searched the cooler, seized the marihuana inside the cooler, and then applied for a search warrant. The record does not contain the warrant. In its closing argument at the suppression hearing, the State argued that

> we have no idea if the judge would have signed a search warrant had there not been any mari[h]uana seized. If that search warrant didn=t contain the language that officers at the scene found a red cooler containing X amount of mari[h]uana, it is unknown at this time if

---

[1] Murphy testified that Sobieszczyk did not handcuff appellant until after he admitted that the red cooler in the garage contained marihuana. However, when asked about the conversation between Sobieszczyk and appellant, Murphy testified that he was Aa ways away from them and [he] didn=t hear all of the conversation.@ Murphy also testified that, when Sobieszczyk asked [appellant] whether the garage contained marihuana, Aat first from the report, [appellant] stated that there was no mari[h]uana. Then [appellant] said that there was, a short time after that, in the red and white cooler, which was inside the garage.@ Sobieszczyk=s testimony makes no mention of the first comment by appellant. Murphy testified that he was approximately eight to ten feet from Sobieszczyk and appellant during the exchange.

an officer would have signed a search warrant to search the remainder of the residence to find it.

The State=s closing argument leads this Court to conclude that the search of the cooler occurred *before* Sobieszczyk applied for the search warrant. Sobieszczyk testified that, after the seizure of the marihuana, appellant was Aplaced under arrest for possession of that mari[h]uana.@[2] Sobieszczyk further testified that, after the search warrant arrived, it was executed by narcotics detectives, who proceeded to search the remainder of appellant=s residence. The only usable quantity of marihuana obtained from appellant=s residence was that found inside the cooler.

---

[2] The arrest warrant specifies that Sobieszczyk arrested appellant for possession of approximately 244.7 ounces of marihuana, a state-jail felony. *See* Tex. Health & Safety Code Ann. ' 481.121(b)(3) (West Supp. 2003).

Appellant filed a motion to suppress both his oral statement to Sobieszczyk and the marihuana obtained from the cooler, contending that both were obtained illegally. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 2003) (evidence obtained unlawfully must be suppressed); *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996) (discussing general situations that may give rise to protections of article 38.23(a)). Specifically, appellant argued that the admission regarding the cooler was the product of a custodial interrogation. Because he had not been read his *Miranda* rights, appellant argued that the statement was inadmissible. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (holding that, before questioning, person in police custody must be warned that he has right to remain silent, that any statement he makes may be used as evidence against him, and that he has right to presence of retained or appointed attorney).[3] Further, appellant argued that no exigent circumstances justified the warrantless search of his garage. *See McNairy v. State*, 835 S.W.2d 101, 106-07 (Tex. Crim. App. 1991) (explaining that to justify warrantless search, police must show existence of probable cause at time of search and exigent circumstances that made procuring warrant impracticable). Finally, appellant argued that, because Texas does not recognize the inevitable-discovery doctrine, the marihuana obtained as a result of his statement and search should be suppressed. *See State v. Daugherty*, 931 S.W.2d 268, 270-71 (Tex. Crim. App. 1996) (holding that plain language of article 38.23(a) of Texas Code of Criminal Procedure

---

[3] Appellant=s argument is that the marihuana seized from the cooler is fruit of the *Miranda* violation. Although the Supreme Court has declared that *Miranda* articulated a constitutional rule rather than merely a prophylactic one, *Dickerson v. United States*, 530 U.S. 428, 444 (2000), the Court has recently decided to review the same circumstances presented here, *United States v. Patane*, 304 F.3d 1013 (10th Cir. 2002), *cert. granted*, 2003 U.S. LEXIS 2948, at *1 (U.S., Apr. 21, 2003) (No. 02-1183).

**6**

does not allow for Aan inquiry into the potential legal acquisition of evidence once it has been established that it was actually >obtained in violation of= law@).

The district court denied appellant=s motion, ruling that appellant was temporarily detained and not under arrest at the time and admitted his statement because it was not the product of custodial interrogation. Further, the court ruled the marihuana and paraphernalia admissible, finding that exigent circumstances permitted the warrantless search.

## DISCUSSION

On appeal, appellant presents two points of error. By his first point of error, appellant argues that the district court erred in finding that appellant was merely detained rather than formally arrested. As a result, he argues that the marihuana in the cooler and his statement were erroneously admitted into evidence. By his second point of error, appellant argues that the district court abused her discretion by ruling that exigent circumstances justified the warrantless search of the cooler.

### *Standard of Review*

A trial court=s ruling on a motion to suppress will be set aside only on a showing of an abuse of discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). This Court affords almost total deference to a trial court=s determination of the historical facts supported by the record, especially when the trial court=s findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Reviewing courts will afford the same amount of deference to trial court rulings on Amixed questions of law and fact,@ if the resolution of those questions turns

7

on an evaluation of credibility and demeanor. *Id*. For mixed questions of law and fact that require more **than an evaluation of credibility and demeanor, such as determinations of probable cause and reasonable suspicion,** *de novo* **review is appropriate.** *Id.* **at 87.**

*Custody*

Appellant=s first point of error asserts that the district court erred in ruling that appellant was merely detained, rather than formally arrested. He argues that, because he had been formally arrested at the time his statement was made, the district court erroneously admitted the admission into evidence. Neither the Fourth Amendment nor article 38.22 of the Texas Code of Criminal Procedure preclude the admission of noncustodial statements. *See, e.g*., *Miranda*, 384 U.S. at 444; *Dowthitt*, 931 S.W.2d at 263. Thus, in order to determine whether appellant=s comments to Sobieszczyk are admissible, we must first determine the point at which officers placed appellant in custody.

**A determination of custody must be made on an** *ad hoc* **basis, in consideration of all of the objective circumstances of the detention.** *Dowthitt***, 931 S.W.2d at 255;** *Shiflet v. State***, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985).** A person is Ain custody@ only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322 (1994). The Areasonable person@ standard presupposes an *innocent* person. *Florida v. Bostick*, 501 U.S. 429, 438 (1991). In determining whether custody exists, the subjective intent of law-enforcement officials to arrest is irrelevant, unless the intent is communicated or manifested to the suspect in some way. *Stansbury*, 511 U.S. at 322; *see also Dowthitt*, 931 S.W.2d at 254; *Dancy v. State*, 728 S.W.2d 772, 778 (Tex. Crim. App. 1987).

**8**

On the other hand, a person held for investigative detention is not in Acustody.@ *Dowthitt*, 931 S.W.2d at 255.  An investigative detention involves detaining a person reasonably suspected of criminal activity in order to determine his identity or to momentarily maintain the *status quo* in order to garner more information.  *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968).  This sort of A*Terry* stop@ must be a temporary detention, must last no longer than necessary to effectuate the purpose of the stop, must involve actual investigation, and must use the least intrusive means possible.  *See State v. Davis*, 947 S.W.2d 240, 244-45 (Tex. Crim. App. 1997) (holding that detention may continue only so long as Aarticulable facts@ support reasonable suspicion that suspect was engaged in criminal activity).  The duration of the detention alone is not determinative.  *See Smith v. State*, 945 S.W.2d 343, 346-47 (Tex. App.CHouston [1st Dist.] 1997, pet. ref=d) (explaining that passage of time must be considered along with law-enforcement purposes to be furthered by detention, and amount of time reasonably necessary to carry out such purposes).

**The need for *Miranda* warnings arises when a person being questioned by law-enforcement officials has been Ataken into custody or otherwise deprived of his freedom of action in any significant way.@ *Miranda*, 384 U.S. at 444.  An initial determination of custody Adepends on the objective circumstances of the interrogation.@ *Stansbury*, 511 U.S. at 323.  The following situations may constitute custody:  (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law-enforcement officer tells the subject he cannot leave, (3) when law-enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, or (4) when there is probable cause to arrest and law-enforcement officers do not tell the suspect he is free to leave.**

**9**

*Id.* at 323-25; *Shiflet*, 732 S.W.2d at 629. For the first three situations, the *Stansbury* decision suggests that the restriction of freedom must elevate to the level of arrest, not merely investigative detention. *Dowthitt*, 931 S.W.2d at 255. Regarding the fourth situation, the officer=s knowledge of probable cause must be manifested to the suspect. *Id.* This manifestation could occur Aif information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers.@ *Id.* Probable cause to arrest cannot alone constitute custody; custody is established only if a manifestation of probable cause, paired with other circumstances, would encourage a reasonable person to believe officers were restricting him to the degree associated with arrest. *Id.*

Curiously, the use of handcuffs does not *necessarily* constitute arrest or custody. *See, e.g.*, *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997) (refusing to adopt bright-line test providing that Amere handcuffing is always the equivalent of an arrest@); *Mays v. State*, 726 S.W.2d 937, 944 (Tex. Crim. App. 1986) (holding that officer=s conduct in handcuffing two men did not constitute arrest and was reasonable under circumstances as investigative detention). Although an interrogation may begin as noncustodial, police conduct during the encounter may transform a consensual exchange into a custodial interrogation. *Dowthitt*, 931 S.W.2d at 255; *Ussery v. State*, 651 S.W.2d 767, 770 (Tex. Crim. App. 1983).

In the present case, Sobieszczyk appeared at appellant=s residence in response to a disturbance call placed by a neighbor. The neighbor complained that she and appellant had argued because she was Atired of [appellant] selling mari[h]uana out of his garage.@ Sobieszczyk

**approached appellant=s residence after speaking a few minutes with the neighbor.** Initially, appellant voluntarily left his garage and engaged in small talk with Sobieszczyk. Sobieszczyk asked appellant general questions pertaining to the disturbance call. Although the officer testified that, even at the time he was speaking with appellant and Reynosa before the arrival of Murphy, neither suspect was free to leave, the officer=s conduct did not elevate the situation beyond an investigative detention. *See Terry*, 392 U.S. at 30-31. Even when Murphy patted down Reynosa for possible weapons, the situation did not exceed a permissible *Terry* frisk because Reynosa=s behavior suggested he might be concealing a weapon. *See id*.

The key moment comes when Sobieszczyk frisked appellant. The officer handcuffed appellant behind his back either before or during the pat down. At this point, Reynosa was already handcuffed and under formal arrest. The officer testified that, during the pat down, he told appellant, A[Y]ou are being detained. I can see the mari[h]uana in there. I can see residue, the drug paraphernalia.@ At the time of this statement, Sobieszczyk had probable cause to arrest appellant, had handcuffed him, and did not tell him that he was free to leave. Sobieszczyk then asked appellant, AIs there anything else I=m going to find in there that=s illegal, any more mari[h]uana?@ When appellant hesitated, Sobieszczyk moved the handcuffed appellant to where Murphy detained Reynosa. Then Sobieszczyk moved to enter the garage. After a couple of seconds, appellant responded, AWell, I guess there=s some pot in the red cooler.@

Applying the *Stansbury* test to these facts, we determine that appellant was in custody at the time Sobieszczyk asked him whether he would find any additional illegal items or marihuana in the garage. First, Sobieszczyk physically deprived appellant of his freedom of action in a significant way when

**11**

he handcuffed him and began patting him down. Second, he told appellant he was being detained, indicating the suspect could not leave. Third, Sobieszczyk=s actions in handcuffing appellant and stating that appellant was detained created a situation that would lead a reasonable person in appellant=s position to believe that his freedom of movement was significantly restricted. Finally, the officer told appellant he saw drug paraphernalia and drug residue in his garage. He indicated that he knew the items were contraband by asking appellant whether he would find anything else Aillegal@ in the garage and whether he would find Aany more mari[h]uana.@ These factors, paired with the fact that Sobieszczyk never told appellant he was free to leave, satisfy the *Stansbury* standards defining custody. *See* 511 U.S. at 323. We hold that appellant was in custody at the time he made the statement concerning the presence of marihuana in the cooler.

*Interrogation*

In *Miranda*, the Supreme Court established that custodial interrogation means Aquestioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.@ 384 U.S. at 444; *see also Rhode Island v. Innis*, 446 U.S. 291, 298 (1980). The Supreme Court clearly distinguishes between volunteered custodial statements and those made in response to interrogation. *Innis*, 446 U.S. at 299-300.

The need for *Miranda* safeguards arises when a person in custody Ais subjected to either express questioning or its functional equivalent.@ *Id.* at 300-01. AInterrogation,@ for *Miranda* purposes, refers both to express questioning and to any words or actions by the police C other than those normally attendant to arrest and custody C that police Ashould know are

reasonably likely to elicit an incriminating response.@ *Id.* at 301. AIncriminating response@refers to both inculpatory and exculpatory responses that prosecutors may seek to introduce at trial. *Id.* at 302 & n.5. The likelihood of eliciting a response focuses on the perception of the suspect, not the intent of the police. *Id.* at 301. The Court noted that any practice the police should know is Areasonably likely to evoke an incriminating response from a suspect@constitutes interrogation. *Id*.

We hold that appellant was Ainterrogated@within the meaning of *Miranda*. Before appellant made any incriminating statements, he was in custody. By asking appellant whether there was Aanything else [he was] going to find in [the garage] that=s illegal, any more mari[h]uana,@ Sobieszczyk engaged in express questioning of appellant. The officer did not first provide *Miranda* warnings to appellant.

At a minimum, Sobieszczyk=s inquiries were the Afunctional equivalent@ of questioning. When Sobieszczyk asked appellant whether he would find more marihuana in appellant=s garage, he had just informed appellant that he had seen marihuana paraphernalia and residue in the garage. Further, according to his own testimony, Sobieszczyk already had placed appellant in handcuffs and told him that he was being detained. No officer had administered the warnings required by *Miranda*.

A police officer Ashould know@that asking appellant whether he would find more narcotics in the garage was Areasonably likely to evoke an incriminating response@from appellant. *Innis*, 446 U.S. at 301. Further, a police officer should know that, if appellant

13

responded in the affirmative, the response would be of the sort prosecutors would seek to introduce at trial. Appellant saw Sobieszczyk begin to enter the garage. He likely believed the officer would find the drugs. Sobieszczyk should have known that the combination of his entry into the garage and his questioning of appellant would encourage the suspect to provide an incriminating response. *See id.*

The State argues that, even if Sobieszczyk Ainterrogated@ appellant, appellant=s statement about marihuana being located in the closed cooler constituted a voluntary statement, rather than an incriminating response to an impermissible interrogation. The State emphasizes the fact that appellant paused and Arefused to answer@ after the officer asked the question. According to the State, this pause effectively ended the conversation between the officer and appellant. Thus, appellant=s admission served as a voluntary statement, making it admissible. The record, however, does not support the State=s assertion. Sobieszczyk testified that the pause lasted but Aa few seconds@ C only enough time for him to take Ajust a couple of steps.@

Voluntary statements generally do not occur in response to a direct question from a police officer. That the suspect was neither expressly nor implicitly questioned by police officers at the time the statement was made often determines the voluntariness of a statement. *See Stevens v. State*, 671 S.W.2d 517, 520 (Tex. Crim. App. 1984) (holding admissible as voluntary defendant=s statement made when in custody but not in response to interrogation); *Sanchez v. State*, 589 S.W.2d 422, 423 (Tex. Crim. App. 1979) (defendant=s statement after arrest that officers were lucky they caught him and his inquiries about whether someone Ahad squealed on

14

him@ admissible as voluntary statements because they were not products of interrogation or responses to inquiry by officers); *Earnhart v. State*, 582 S.W.2d 444, 448 (Tex. Crim. App. 1979) (statement of arrested defendant who said, AIt=s got blood on it. I want to get a clean one,@when grabbing shirt to wear was admissible because it was voluntary and not made in response to inquiry or as result of interrogation); *Davis v. State*, 780 S.W.2d 945, 947 (Tex. App.CFort Worth 1989, pet. ref=d) (finding that suspect=s statement, AIt=s cool. You got me,@upon apprehension by police was admissible as *res gestae* or voluntary statement before interrogation).

Here, appellant=s incriminating statement directly responded to an inquiry from Sobieszczyk. Under these facts, we cannot say that the statement was voluntary. We hold that appellant=s statement was made pursuant to a custodial interrogation and was thus inadmissible in evidence.

*Warrantless Search of Garage and Cooler*

1. *Protective Sweep*

By his second issue, appellant argues that the district court erred in finding that exigent circumstances supported Sobieszczyk=s warrantless search of appellant=s garage. Specifically, he argues that the district court=s finding that such circumstances permitted Sobieszczyk to search the closed cooler without a warrant was error.

The State rejoins that Sobieszczyk=s entry into appellant=s garage constituted a Aprotective sweep.@ A protective sweep is a Aquick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.@ *Maryland v. Buie*, 494

U.S. 325, 328 (1990).  In *Buie*, the United States Supreme Court noted that Athe Fourth Amendment bars only unreasonable searches and seizures.@ *Id*. at 331.  To determine whether a search is reasonable, courts should balance an individual=s privacy interest with the promotion of legitimate government interests.  *Reasor v. State*, 12 S.W.3d 813, 816 (Tex. Crim. App. 2000).  Searching a home is Agenerally not reasonable without a warrant issued on probable cause.@ *Buie*, 494 U.S. at 331.

However, A[t]he Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief that the area to be swept harbors an individual posing a danger to those on the arrest scene.@ *Id.* at 337 (quoted in *Reasor*, 12 S.W.3d at 816).  The sweep cannot be a Afull search of the premises.@ *Id*. at 335.  Instead, it may only extend Ato a cursory inspection of those spaces where a person may be found.@ *Id.*  The sweep may only last long enough to Adispel the reasonable suspicion of danger.@ *Id.*  The protective sweep is permitted only when Ajustified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene.@ *Id.* at 336.

Applying such standard to the case before us, we conclude that the protective sweep of appellant=s garage, which was connected to appellant=s house, was justified.  Sobieszczyk was reasonably concerned about his safety.  He testified that he felt a protective sweep was necessary, after detaining and securing appellant, to ensure that no other adults remained in the garage.  Murphy=s pat down of Reynosa had revealed a weapon.  Sobieszczyk

**also testified that the lighting in the garage was poor, that the partially open door prevented him from viewing all portions of the garage from outside, and that he did not know how many people were in the garage.**

**However, the sweep was permissible only to the extent necessary to ensure that no dangerous or armed individuals remained in the garage. Sobieszczyk=s testimony established that the garage was rather smallBonly about Aa 12 [feet] by 12 [feet] section.@ Thus, the officer was permitted to sweep the room only to the degree necessary to establish that no individuals remained, and his sweep was limited to those spaces Awhere a person may be found.@ *Id.* at 337. Thus, although the protective sweep was legal, it did not allow the officer to search the cooler inside the garage, because the officer could not reasonably believe that a person might be found in the cooler.**

### 2. *Exigent Circumstances*

Because the protective sweep would not permit Sobieszczyk=s search of the cooler, we now determine whether the search was otherwise permissible. The district court found that exigent circumstances permitted the warrantless search of the garage and cooler. Appellant contends that the court erred because no exigent circumstances existed to justify the search of the cooler. We agree.

**Texas law does not recognize the inevitable-discovery doctrine, which would permit admission of evidence obtained in an unlawful search if such evidence would later have been obtained lawfully. In *Daugherty*, the court of criminal appeals confirmed that, if evidence was**

**17**

**obtained illegally under article 38.23(a) of the code of criminal procedure, it must be excluded.[4]**

**931 S.W.2d at 269. No exception exists for evidence that later might have been obtained lawfully.**

*Id.* **Thus, unless evidence is obtained legally with a search warrant or through one of the carefully-crafted exceptions to the warrant requirement, the evidence must be excluded.**

Because the officers had neither a warrant nor appellant=s consent, and had not informed appellant that he was under arrest when the cooler was seized and searched, the State bears the burden of proving the reasonableness of the search. *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986); *Newhouse v. State,* 53 S.W.3d 765, 769 (Tex. App.CHouston [1st Dist.] 2001, no pet.). The State must show: (1) probable cause existed at the time the officer made the search and (2) that exigent circumstances existed that made obtaining a warrant impracticable. *Taylor v. State*, 945 S.W.2d 295, 300 (Tex. App.CHouston [1st Dist.] 1997, pet. ref=d).

---

[4] Article 38.23(a) provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2003).

**A finding of exigent circumstances usually includes Afactors pointing to some danger to the officer or victims, an increased likelihood of apprehending a suspect, or the possible destruction of evidence.@** *McNairy*, **835 S.W.2d at 107. Thus, situations justifying a warrantless search include: (1) rendering aid or assistance to persons whom the officers reasonably believe are in need of assistance, (2) preventing the destruction of evidence or contraband, and (3) protecting the officers from a person whom they reasonably believe to be present and armed and dangerous.** *Id.* **(citing** *Stewart v. State*, **681 S.W.2d 774 (Tex. App.CHouston [14th Dist.] 1984, pet. ref=d)). To prove exigent circumstances existed, the State must show Athat the police could have reasonably concluded that evidence would be destroyed or removed before they could obtain a search warrant.@** *Id.*

Deferring to the district court=s findings, we assume that the State established probable cause to enter the garage. *See Newhouse,* 53 S.W.3d at 769; *see also McNairy*, 835 S.W.2d at 106 (holding that probable cause exists when reasonably trustworthy facts and circumstances in officer=s knowledge would lead reasonably prudent individual to believe that instrumentality of crime or evidence of crime will be found). However, the State must also show exigent circumstances justified the warrantless search. *Newhouse*, 53 S.W.3d at 769; *Taylor*, 945 S.W.2d at 300.

**The Fourth Amendment prohibits a search of closed containers without a warrant where no clear exigency exists.** *United States v. Chadwick*, **433 U.S. 1, 15 (1977);** *State v. Porter,* **940 S.W.2d 391, 393 (Tex. App.CAustin 1997, no pet.) (explaining that, although discovery of marihuana in suspect=s room created probable cause, that alone failed to justify searching**

suspect=s luggage without search warrant or exigent circumstances).  Sobieszczyk maintained the authority to seize the cooler.  *California v. Acevedo*, 500 U.S. 565, 575 (1991) (law enforcement officers may seize container and hold it until they obtain search warrant); *Chadwick*, 433 U.S. at 13 (initial seizure and detention of suspect=s footlocker from railroad station valid, even before search warrant received).  However, a container=s seizure does not compromise the interest in preserving the privacy of its contents, because it may only be opened pursuant to either a search warrant or one of the exceptions to the warrant requirement.  *Horton v. California*, 496 U.S. 128, 142 & n.11 (1990).

As a general rule, Aindividuals can manifest legitimate expectations of privacy by placing items in closed, opaque containers that conceal their contents from plain view.@ *United States v. Villarreal*, 963 F.2d 770, 773 (5th Cir. 1992).  The type of container generally does not affect Fourth Amendment protection, nor should the analysis focus on whether individuals typically use the container to transport personal effects.  *Id.*  Generally, closed, opaque containers remain subject to the warrant requirement.  *Id.* at 774.  No amount of probable cause will justify a warrantless search or seizure absent exigent circumstances.  *Id.* at 777 (citing *Taylor v. United States*, 286 U.S. 1, 6 (1932)).

The *McNairy* court identified five factors relevant to a reasonable determination by the searching officers that evidence might be destroyed or removed before they obtained a search warrant: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) a reasonable belief that the contraband is about to be removed; (3) the possibility of danger to

police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in narcotics trafficking. *McNairy,* 835 S.W.2d at 107 (citing *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973)).

The State has failed to demonstrate the existence of exigent circumstances. There not only was ample time to obtain a search warrant, but the State did in fact obtain one. The warrantless search served no law-enforcement purpose that could not have been served by waiting for the warrant. The protective sweep established that no individuals remained in the garage. Sobieszczyk removed the cooler from the garage, placing it in his control and out of danger of being destroyed. Without appellant=s statement, the officer had no reason to believe that the cooler contained marihuana. Nothing in Sobieszczyk=s testimony suggests that the officer maintained such a belief before appellant=s statement. No reasonable threats to the officers= safety existed, because appellant and Reynosa were handcuffed and within the officers= control. When objectively considering the facts and circumstances confronting the officers at the time of the search, the State failed to establish that a reasonable officer would have felt it necessary to search the cooler or the garage premises without a warrant. *Brimage v. State*, 918 S.W.2d 466, 501 (Tex. Crim. App. 1994). The State failed to offer a legally justifiable reason why Sobieszczyk performed the search without a warrant. We cannot correct this oversight after the fact.

***Villarreal***, 963 F.2d at 777.  **We hold that the district court erred by finding that exigent circumstances existed to justify the warrantless search of the cooler.**

*The Plain-View Doctrine*

Sobieszczyk=s testimony establishes that the garage was small, and he did not believe at the time of the seizure that any entrance to the garage from the house existed.  The garage door was open.  The officer was within his authority to perform a protective sweep to ensure that no other individuals remained in the garage.  Because the drug paraphernalia was in the officer=s plain view, he was within his authority to seize those objects.  *Martinez v. State*, 17 S.W.3d 677, 685 (Tex. Crim. App. 2000).  Based on the information available to Sobieszczyk at the time, once he swept the garage and removed the evidence, the evidence was secure.

The plain-view-seizure doctrine requires both of the following:  (1) that an officer see an item in plain view at a vantage point where he has the right to be, and (2) that the officer immediately recognize the seized item constitutes evidence.  *Id.* at 685; *Ramos v. State*, 934 S.W.2d 358, 365 (Tex. Crim. App. 1996).  The seizing officer must also have probable cause to associate the item seized with criminal activity.  *Martinez*, 17 S.W.2d at 685.  Discovery of the seized item need not be inadvertent.  *Horton*, 496 U.S. at 141-42; *Ramos*, 934 S.W.2d at 365; *State v. Haley*, 811 S.W.2d 597, 599 (Tex. Crim. App. 1991).

Application of the plain-view doctrine to the facts of the present case establishes that the test only justifies some of the evidence seized by Sobieszczyk without a warrant.  The neighbor=s call provided the officer with sufficient reason to visit appellant=s residence.  When appellant opened the door to

the garage, he offered the officer a view into the garage, which included that area in the officer=s permissible vantage point. Because appellant=s companion Reynosa left the door open after joining appellant and Sobieszczyk outside, he offered the officer a continuing view inside the garage. The open garage door provided Sobieszczyk a clear view of the marihuana pipe and the scales covered with marihuana seeds. Because Sobieszczyk was justified in conducting the protective sweep, his seizure of these items falls within the plain-view doctrine. *Martinez*, 17 S.W.3d at 685.

The cooler, however, does not fall within the doctrine. The plain-view exception to the warrant requirement allows police officers to seize incriminating items that they discover in their legitimate law-enforcement activities. The exception does not justify warrantless, exploratory searches of closed containers that purport to contain innocuous materials. *Villarreal*, 963 F.2d at 776. **The open garage door provided Sobieszczyk with a plain view of the cooler. However, without appellant=s statements, Sobieszczyk did not immediately recognize a connection between the cooler and marihuana, nor would it have been reasonable for him to do so. Under these facts, we hold that Sobieszczyk had probable cause to apply for a warrant and, in the meantime, to secure the premises and to seize the cooler, but not to search the cooler.**

*Harm Analysis*

**Having determined that constitutional error occurred, we must now determine whether the error was harmless beyond a reasonable doubt. Tex. R. App. P. 44.2(a). To decide harmless error, we consider: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent the State emphasized the error; (4) the error=s probable collateral implications;**

(5) how much weight a juror would probably place on the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *See Harris v. State,* 790 S.W.2d 568, 587 (Tex. Crim. App. 1989); *Taylor*, 945 S.W.2d at 299.

Here, the State used evidence seized after an impermissible custodial interrogation and an improper search that violated appellant=s constitutional rights. The State=s case rested upon the evidence seized from the cooler. Not only did the seized evidence cause appellant to plead guilty, but a jury would probably place great weight on the evidence for the same reasonCit is the only direct evidence of the crime charged. Finally, declaring the officer=s warrantless search and custodial interrogation without *Miranda* protections to be harmless error could substantially undermine the protection afforded individuals from unreasonable searches and seizures and erode the protections afforded by *Miranda*. Based on the facts of this case, we believe that the district court=s error contributed to appellant=s conviction. In any event, we cannot say beyond a reasonable doubt that it did not. We hold that the error caused appellant harm.

## CONCLUSION

We hold that the district court erred by overruling Ramirez=s motion to suppress (1) his statement regarding marihuana in the cooler and (2) the marihuana obtained from the cooler. Therefore, we reverse the district-court judgment and remand the case for further proceedings consistent with this opinion.

24

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Reversed and Remanded

Filed:   May 1, 2003

Publish