In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00070-CR


______________________________




JIMMY LYNN CAGLE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law #1


Gregg County, Texas


Trial Court No. 2004-1805




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Jimmy Lynn Cagle appeals from the revocation of his community supervision. He contends
that the trial court erred by denying his motion to dismiss. Cagle sought dismissal because the State
failed to pursue its motion to revoke with due diligence. Specifically, Cagle argues that the due-
diligence defense should extend to situations like this one, in which the motion to revoke was filed
January  19,  2005,  and  an  arrest  warrant  signed  the  following  day,  but  not  executed  until
February 14, 2007, over two years later. (1) We affirm the trial court's judgment.

 At the revocation hearing, the State presented evidence that Cagle violated the terms of his
community supervision by failing to pay community supervision fees or his fine, to complete
community service, to attend a victim's panel, to pay Crime Stopper fees, or to notify the community
officer of any contact between himself and the police.

 Cagle argues that, since the delay shows a lack of due diligence which was not explained
adequately by the State, the revocation should be reversed. The issue raised in this appeal has been
addressed by this Court. In Wheat v. State, 165 S.W.3d 802 (Tex. App.--Texarkana 2005, pet.
dism'd, untimely filed), we discussed recent changes in statutory law and concluded that, under the
current statutory regime, the due-diligence defense is limited to situations in which the ground for
revocation is a failure to report as ordered or to remain within a specified place--neither of which
were grounds for revocation in this case. Id. at 805-06; see Tex. Code Crim. Proc. Ann. art. 42.12,
§ 24 (Vernon Supp. 2007). (2)

 Arguing that we should revisit our decision in Wheat, counsel contends that the recent
amendments were intended to apply only to situations in which a probationer successfully leaves the
area for an extended period of time--so the successful absconder is not rewarded with a dismissal
of a petition to revoke. Thus, Cagle argues, the prior caselaw addressing a State's failure to exercise
due diligence in executing a capias on a probationer should still be given effect here.

 We disagree. We continue to hold, as we did in Wheat, that the plain meaning of the
amendments eliminated the general due-diligence defense and provided a version of that defense
only for enumerated situations and only with a different burden of proof. We decline the invitation
to revisit our decision in Wheat. We overrule the contention of error.

 We affirm the judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: November 19, 2007

Date Decided: November 20, 2007
1. On July 20, 2004, Cagle was placed on two years' community supervision. 
2. That is a change from prior law, under which it was the State's duty to exercise due diligence
in pursuing community supervision violations. See Peacock v. State, 77 S.W.3d 285 (Tex. Crim.
App. 2002); Harris v. State, 843 S.W.2d 34 (Tex. Crim. App. 1992).



60;                     

On Appeal from the 354th Judicial District Court
Hunt County, Texas
Trial Court No. 19,045


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION
            Responding to a curious report that a driver had fallen asleep behind the wheel while in a
local fast-food restaurant's drive-through, Commerce, Texas, police officers arrived on the scene to
see Kendell Glen Nichols "slumped down" in the driver's seat with his chin on his chest. From
outside the vehicle, they saw a beer can on the vehicle's floor. Officer Allen Hammond testified that,
from outside the vehicle, he then saw, in plain view in an open console
what looked to be a glass vial or tube that had black markings or burn marks on them,
which, through my experience, it looked like that which is used to smoke
amphetamines or other narcotics. I also saw a [sic] off-white or yellowish hard-like
substance. It was about maybe about as big as my knuckle, at first was all I could
see, and there was numerous plastic baggies also inside a little black pouch.
In this appeal, we are called on to determine whether there was sufficient evidence that the officers
saw, in plain view, drug paraphernalia or suspected controlled substances. There was sufficient
evidence. Therefore, we affirm.
            On March 18, 1998, Nichols pled guilty in Hunt County cause number 19,045 to possessing,
with intent to deliver, an amount of amphetamine that weighed more than four grams but less than
400 grams, including adulterants and dilutants. The charged offense is a first-degree felony. Tex.
Health & Safety Code Ann. § 481.103(a)(3) (Vernon 2003) (amphetamine penalty group 2 drug);
Tex. Health & Safety Code Ann. § 481.113(d) (Vernon 2003) (possession with intent to deliver 
drug in penalty group 2 in amount between 4 and 400 grams is second-degree felony). There was
no plea agreement. The trial court considered the evidence and sentenced Nichols to ten years'
imprisonment. Nichols subsequently filed a timely


 notice of appeal.
            On July 2, 2003, Nichols' appellate counsel filed an Anders


 brief in which he professionally
discussed the record, described the issues reviewed, and concluded there were no arguable grounds
for appeal, and, as required by Anders, also filed a motion to withdraw. Counsel also sent Nichols
a copy of the appellate brief and informed Nichols of his rights to file a pro se response and to review
the record. 
            This Court informed Nichols at that time that his response, if any, was due by August 1,
2003. As of this date, Nichols has not filed a pro se response. We have independently reviewed the
record and the brief filed by counsel in this appeal, and we agree there are no arguable issues that
would support an appeal in this case.
            We first note Nichols filed a pretrial motion to suppress. When reviewing a trial court's
ruling on a motion to suppress, we will not disturb the ruling absent a showing the trial court abused
its discretion. Maddox v. State, 682 S.W.2d 563, 564 (Tex. Crim. App. 1985). In a suppression
hearing, the trial court is the sole judge of witness credibility and the weight to be given to witness
testimony. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court is free
to believe or disbelieve all or part of a witness' testimony. Meek v. State, 790 S.W.2d 618, 620 (Tex.
Crim. App. 1990). We must also view the evidence in the light most favorable to the trial court's
ruling, considering whether the trial court improperly applied the law to the facts. Romero, 800
S.W.3d at 543.
            At the hearing on Nichols' motion to suppress, the State conceded its police officers made
a warrantless search of Nichols' vehicle. Accordingly, the burden shifted to the State to show the 
search of Nichols' car fell within one of the exceptions to the requirement that police not search a
person's property without securing a warrant. See McGee v. State, 105 S.W.3d 609, 615 (Tex. Crim.
App. 2003). One such exception is the "plain view" doctrine. See Ramirez v. State, 105 S.W.3d 730,
745 (Tex. App.‒Austin 2003, no pet. h.) (plain view exception requires officer see item in plain view
at vantage point where officer has right to be and that officer immediately recognize that seized item
constitutes evidence).
            Viewing the evidence in the light most favorable to the trial court's ruling, we find that
evidence exists to support the trial court's ruling that the drugs were seized pursuant to the plain view
exception to the warrant requirement. Hammond testified he was standing outside the car in the
parking lot of a public restaurant when he saw the items inside Nichols' vehicle which Hammond,
based on his experience, knew immediately to be drug paraphernalia and suspected illegal narcotics. 
Therefore, the trial court did not abuse its discretion by denying Nichols' motion to suppress. 
            The record also supports the trial court's stated finding that Nichols' guilty plea, made
following the denial of his motion to suppress, was made willingly, knowingly, and voluntarily, and
was not the product of any plea agreement. Before accepting Nichols' plea, the trial court inquired
whether Nichols understood that, by waiving his right to a jury trial, pleading guilty, and submitting
the case to the trial court for punishment, the full range of punishment would be available to the trial
court. Nichols affirmatively stated, on the record and in writing, he understood the ramifications of
his jury waiver and his guilty plea. 
            At the sentencing hearing, Nichols presented the testimony of several witnesses. Nichols
himself testified he believed no sentence of imprisonment would help him with his past drug
problems. He discussed the important roles he played in his family, including acting as a surrogate
big brother to his nephews and assisting his parents with the upkeep of their home. Nichols then
asked the trial court to sentence him to community supervision with a condition that he receive strict
out-patient drug treatment. 
            Through its cross-examination of Nichols and other witnesses, the State showed that Nichols
was already on community supervision for a state jail felony drug conviction in Dallas at the time
he was arrested on the charges in this case and that he also had drug charges pending in Rockwall
at the time of the sentencing hearing. Nichols also admitted that, when he was arrested in this case,
he had in his possession sixty-seven tablets of Diezapan (Valium), over half a pound of marihuana,
electronic scales, a soldering torch (used to cook methamphetamine), and a pistol. 
            In this case, the punishment assessed by the trial court was ten years' imprisonment. This is
at the low end of the range permitted under Texas law. See Tex. Pen. Code Ann. § 12.32(a)
(Vernon 2003). There is no evidence in the record before us of any plea agreement or of a promise
of community supervision from either the State or the trial court. To the contrary, Nichols' own
testimony on direct examination affirmatively refutes the existence of any such promise of leniency. 
Accordingly, we affirm the trial court's judgment.


                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice
 
Date Submitted:          October 1, 2003
Date Decided:             October 17, 2003

Do Not Publish