ACCEPTED
01-14-00054-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/30/2014 10:16:38 AM
CHRISTOPHER PRINE
CLERK

## CASE NO. 01-14-00054-CR

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
12/30/2014 10:16:38 AM
CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS
## FIRST SUPREME JUDICIAL DISTRICT
## HOUSTON, TEXAS

### ALPHONSON DAMON MALONE,
*APPELLANT*

### V.

### THE STATE OF TEXAS,
*APPELLEE*

### On Appeal from the County Criminal Court
### At Law No. 8
### of Harris County, Texas
### Cause No. 1899612

## APPELLANT'S REPLY BRIEF

**GARY TABAKMAN**
**TBA No. 24076065**
**712 MAIN ST., Ste. 2400**
**HOUSTON, TEXAS 77002**
**TELEPHONE: (713) 228-8500**
**FACSIMILE: (713) 228-0034**
**EMAIL: Gary@BSDLawfirm.com**

**COUNSEL FOR APPELLANT,**
**ALPHONSON DAMON MALONE**

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 38.1(a), the following is a list of all parties to the trial court's judgment, and respective trial and appellate counsel:

Presiding Judge
The Honorable Jay Karahan
Harris County Criminal Court at Law No.8
1201 Franklin, 9th Floor
Houston, Harris County, Texas 77002

Attorneys for Appellee    (State of Texas)
Ryan Trask              (at trial)
Alan Curry              (on appeal)
Harris County District Attorney's Office
1201 Franklin
Houston, Texas 77002

Attorneys for Appellant
Gary Tabakman           (at trial and on appeal)
712 Main, Ste. 2400
Houston, Texas 77002

Appellant
Alphonson Damon Malone

# TABLE OF CONTENTS

**PAGE**

IDENTITY OF PARTIES AND COUNSEL ......................................................... ii

TABLE OF CONTENTS ................................................................................... iii

INDEX OF AUTHORITIES ...............................................................................iv

PRELIMINARY STATEMENT ........................................................................ vii

EXPLANATION OF SYMBOLS ....................................................................... vii

REPLY TO APPELLEE'S RESPONSE TO ISSUE NUMBER ONE .....................1

REPLY TO APPELLEE'S RESPONSE TO ISSUE NUMBER TWO ....................1

REPLY TO APPELLEE'S RESPONSE TO ISSUE NUMBER THREE.................1

CERTIFICATE OF COMPLIANCE ..................................................................11

CERTIFICATE OF SERVICE ..........................................................................11

# INDEX OF AUTHORITIES

**CASES**                                                         **PAGE**

*Balentine v. State,*
   71 S.W.3d 763 (Tex. Crim. App. 2002) ...............................................................3,4

*Carmouche v. State,*
   10 S.W.3d 323 (Tex. Crim. App. 2000) .................................................................8

*Dancy v. State,*
   728 S.W.2d 772 (Tex.Crim.App.1987). ..................................................................5

*Davis v. State,*
   947 S.W.2d 240 (Tex.Crim.App.1997) ...................................................................5

*Dowthitt v. State*,
   931 S.W.2d 244, (Tex. Crim. App.1996 ) ...............................................................5

*Florida v. Bostick,*
   501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)...................................4

*Josey v. State*,
   981 S.W. 2d at 839 (Tex. App.- Houston [14th Dist] 1998, pet, ref'd. ...................2,4

*Morris v. State,*
   50 S.W.3d 89, 97 (Tex. App.- Fort Worth 2001, no pet.) ......................................3,4

*Rhode Island v. Innis*,
   446 U.S. 291(1980)..............................................................................................9

*Rhodes v. State,*
   945 S.W.2d 115 (Tex. Crim. App. 1997). ...............................................................2

*Ramirez v. State*,
   105 S.W.3d 730 (Tex.App.-Austin 2003, no pet.)......................................... 4,5,6,7

*Roquemore v. State*,
   60 S.W.3d 862, 868 (Tex.Crim.App.2001) .............................................................9

*Stansbury v. California*,
    511 U.S. 318 (1994)...................................................................................4,5,6

*State v. Moore,*
    S.W.3d 383 (Tex.App.-Austin 2000, no pet.)........................................................4,7

*State v. Ortiz,*
    382 S.W.3d 367 (Tex. Crim. App. 2012) ...........................................................4,8,9

*Terry v. Ohio,*
    392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)....................................................5

*Ussery v. State*,
    651 S.W.2d 767 (Tex. Crim. App.1983) ................................................................5

*Wong Sun v. United States,*
    371 U.S. 471 (1963)......................................................................................10

## PRELIMINARY STATEMENT

This appeal stems from Alphonson Damon Malone's, Appellant, denial of motion to suppress evidence after an evidentiary hearing held on December 6, 2013.  On October 2, 2014, Appellant filed his brief complaining in three (3) issues that the Trial Court erred in denying Appellant's motion to suppress evidence seized following a custodial interrogation conducted without *Miranda* warnings; that the warrantless detention and arrest of appellant was unreasonable and in violation of the Fourth Amendment of The Unites States Constitution; and that the evidence seized following the warrantless detention of Appellant is inadmissible pursuant to Article 38.23(a) V.A.C.C.P. The State accordingly filed its brief in response. Pursuant to Texas Rule of Appellate Procedure 38.3, Appellant files his brief in reply.

## EXPLANATION OF SYMBOLS

"CR" will be used to indicate the clerk's record.

"RR" will be used to reference the reporter's record from the hearing on the motion to suppress evidence.

"SB" will be used to reference State's Brief.

"AB" will be used to reference Appellant's Brief.

## REPLY TO APPELLEE'S RESPONSE TO ISSUE NUMBER ONE

Appellant's Issue Number One Reads:

The Trial Court Erred In Denying Appellant's Motion To Suppress Evidence Seized Following A Custodial Interrogation Conducted Without *Miranda* Warnings.

## REPLY TO APPELLEE'S RESPONSE TO ISSUE NUMBER TWO

Appellant's Issue Number Two Reads:

The Warrantless Detention And Arrest Of Appellant Was Unreasonable And In Violation Of The Fourth Amendment Of The Unites States Constitution.

## REPLY TO APPELLEE'S RESPONSE TO ISSUE NUMBER THREE

Appellant's Issue Number Three Reads:

The Evidence Seized Following The Warrantless Detention Of Appellant Is Inadmissible Pursuant To Article 38.23(a) V.A.C.C.P.

In his opening Brief, Malone points out that he was the passenger in the vehicle driven by his friend who was eventually released by police. That fact will never change as we proceed to evaluate Appellee's brief. Appellant will address the facts of the case through the sequence of events on June 1, 2013.

The State focuses their response on whether the handcuffing of Appellant was an investigative detention or arrest, and if Appellant was the subject of a custodial interrogation. Although we may agree that the line between the two is not

1

always clear, the facts here lean heavily towards an arrest as opposed to a simple detention. As discussed in *Rhodes v. State,* each citizen-police encounter must be factually evaluated in its own terms. 945 S.W.2d 115, 118 (Tex. Crim. App. 1997). That is exactly what should be done here.

The initial interaction between Officer Sutton and Alphonson Malone is a show of authority. Officer Sutton pulled the driver over and handcuffed both the driver and passenger immediately without asking a single question. (2RR-42). Despite the fact that the State claims Officer Sutton feared for his safety, there was in fact no testimony that Officer Sutton **actually** feared for his safety. (SB-9). What Officer Sutton testified to was that in different types of scenarios, **such as** officer safety, handcuffing an individual would be appropriate. (2RR-12). Another reason the State believes handcuffing was appropriate was that Officer Sutton saw what he believed to be "loose" marijuana on the driver who was not arrested. (2RR-13). However, there was no physical evidence recovered as to "loose" marijuana or "shake" that Officer Sutton supposedly saw. (2RR-30-31). Handcuffing Appellant was unreasonable and as the trial court properly found, led to his arrest prior to questioning. (Supp. CR 4).

Significantly, with respect to the issue of arrest, the State focuses on cases that are very distinguishable from the matter at hand. In *Josey v. State*, officers observed what they believed to be criminal activity and the appellant was detained

after the driver of the vehicle was arrested on separate charges. 981 S.W. 2d at 839 (Tex. App.- Houston [14th Dist] 1998, pet, ref'd.) The appellant was detained after an inventory search of the vehicle revealed a plastic bag of money consistent with drug transactions. *Id.* Furthermore, the vehicle actually belonged to the appellant, not the driver, and a crowd of five to ten people gathered at the corner of a nearby intersection which truly concerned officers' about their safety and maintaining the status quo. *Id.* at 840. The appellant was then handcuffed and placed on the other side of the patrol car while police investigated further criminal activity. *Id.*

In *Morris v. State*, officers working undercover observed a reverse drug transaction where the passenger in the vehicle was suspected of being involved. 50 S.W.3d 89, 97 (Tex. App. - Fort Worth 2001, no pet.). The court addressed the handcuffing and apprehension of the passenger as a temporary investigatory detention due to her proximity to the transaction, her connection to one of the individuals involved in the drug transaction, and her connection to a vehicle used in the drug transaction. *Id.*

In *Balentine v. State,* an officer who was working alone stopped a person walking briskly away from the scene of a crime. 71 S.W.3d at 767 (Tex. Crim. App. 2002). The officer conducted a *Terry* search of the person, but did not find any weapons. *Id.* The officer suspected that the appellant may have been involved in the reported gunfire and he escorted the appellant to the back seat of his patrol

3

car for further questioning without handcuffing him. *Id.* After the initial search, the officer asked the suspect a series of questions and received contradictory answers. *Id.* Based on the suspect's contradictory answers, the officer placed the suspect in handcuffs and conducted a second frisk of the individual and found a bullet (which was later used to link the suspect to the crime). *Id.* at 768. The suspect's contradictory answers gave the officer "heightened" suspicions, which justified the second frisk. *Id.* at 769–70.

There are no circumstances in this case that are remotely similar to that of *Josey, Morris and Balentine.* However, a closer look at the facts in this case reveals the encounter between Officer Sutton and Appellant was more like *Ramirez v. State*, 105 S.W.3d 730 (Tex.App.-Austin 2003, no pet.),; *State v. Moore* S.W.3d 383, 386 (Tex.App.-Austin 2000, no pet.); and *State v. Ortiz,* 382 S.W.3d 367 (Tex. Crim. App. 2012).

A more thorough review of "arrest" and "custody" cases is needed to properly evaluate this case. A person is "in custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). The "reasonable person" standard presupposes an innocent person. *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). In determining

whether custody exists, the subjective intent of law-enforcement officials to arrest is irrelevant, unless the intent is communicated or manifested to the suspect in some way. *Stansbury*, 511 U.S. at 322, 114 S.Ct. 1526; *see also Dowthitt*, 931 S.W.2d at 254; *Dancy v. State*, 728 S.W.2d 772, 778 (Tex.Crim.App.1987).

On the other hand, a person held for investigative detention is not in "custody." *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App.1996 ). An investigative detention involves detaining a person reasonably suspected of criminal activity in order to determine his identity or to momentarily maintain the status quo in order to garner more information. *Terry v. Ohio*, 392 U.S. 1, 20–21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This sort of "*Terry* stop" must be a temporary detention, must last no longer than necessary to effectuate the purpose of the stop, must involve an actual investigation, and must use the least intrusive means possible. See *Davis v. State*, 947 S.W.2d 240, 244–45 (Tex.Crim.App.1997) (holding that detention may continue only so long as "articulable facts" support reasonable suspicion that suspect was engaged in criminal activity).

Furthermore, an interrogation may begin as noncustodial; police conduct during the encounter may transform a consensual exchange into a custodial interrogation. *Dowthitt*, 931 S.W.2d at 255; *Ussery v. State*, 651 S.W.2d 767, 770 (Tex.Crim.App.1983). This is where *Ramirez* is similar to the instant case. In *Ramirez,* while conducting a pat down, the officer told Ramirez he was being

5

detained and placed him in handcuffs. 105 S.W.3d at 736. The officer informed Ramirez that he could see drug paraphernalia and drug residue in the garage and asked, "Is there anything else I'm going to find in there that's illegal, any more marijuana?" *Id.* Ramirez replied, "Well, I guess there's some pot in the red cooler." *Id.*

The *Stansbury* test was applied to the facts in *Ramirez* and it was determined that the appellant was in custody at the time the officer asked him whether he would find any additional illegal items or marijuana in the garage. *Id.* at 738. First, the officer physically deprived appellant of his freedom of action in a significant way when he handcuffed him and began patting him down. *Id.* Second, he told the appellant he was being detained, indicating the suspect could not leave. *Id.* Third, his actions in handcuffing the appellant and stating that he appellant was detained created a situation that would lead a reasonable person in the appellant's position to believe that his freedom of movement was significantly restricted. *Id.* Finally, the officer told the appellant he saw drug paraphernalia and drug residue in his garage. He indicated that he knew the items were contraband by asking the appellant whether he would find anything else "illegal" in the garage and whether he would find "any more marijuana." *Id.* These factors satisfied the *Stansbury* test for custody.

As in *Ramirez,* the *Stansbury* test satisfies the case at hand. First, Officer Sutton physically deprived Appellant of his freedom of action in a significant way when he handcuffed him and began patting him down. (2RR-32). Second, neither Appellant nor the driver were free to leave. (2RR-36,42). Third, Officer Sutton's actions in handcuffing Appellant and stating that Appellant was detained created a situation that would lead a reasonable person in appellant's position to believe that his freedom of movement was significantly restricted. Finally, Officer Sutton told the driver in front of Appellant that he saw drug residue on his shoulder and questioned the driver about drugs. (2RR-29). Most importantly, Officer Sutton could reasonably foresee that his question would elicit an incriminating response when he asked Appellant, "You are not going to BS me like your buddy…You're going to be honest with me about what's going on here," to which Appellant gave the following incriminating response of, "I'm going to be honest with you. I have a sweet in my pocket." (2RR-49).

In *Moore,* the state argues that this case is not similar (where the court found that handcuffing the appellant was not reasonably necessary) based solely on the fact that the crime was forgery and not possession of marijuana. (SB-11). However, the state fails to recognize that the similarities in *Moore* to this case heavily outweigh the single factor of the type of crime being committed. Each factor addressed in *Moore* was applied to the facts in this case in Appellant's brief,

7

showing a striking similarity; from reasonable suspicion for the handcuffing, the area and time of night, the officer being alone (for just over one minute), to the officer not conducting any type of investigation. (AB 13-14). Furthermore, because the subjective beliefs of the detaining officer are not included in the calculation of whether a suspect is in custody, we should not minimize the actions of Officer Sutton based solely on the type of crime Appellant was eventually arrested for. *Ortiz,* 382 S.W.3d at 372.

Although the issue of custodial interrogation is subject to a de novo review as an issue of law; the reviewing court gives almost total deference to a trial court's determination of historical facts. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). The trial court found that Appellant was under arrest prior to making his statement to Officer Sutton, thus we again address if Appellant's statement was the product of a custodial interrogation. The State misses the mark by leading the court to view *Ortiz* as distinguishable with respect to this issue. (SB-18). If facts from trial court cases were identical to cases establishing a precedent, our courts would not have much work to do.

It is true that Officer Sutton may have not asked Appellant specifically about "drugs" or "marijuana" such as in *Ortiz.* However, the driver was questioned in front of Appellant about marijuana being on his person or in the vehicle, two officers were at the scene by the time Appellant is questioned, the officers had

manifested their belief to Appellant that he and the driver were connected to narcotics in some way, and Officer Sutton testified Appellant was not free to leave. (AB-9). As Officer Sutton only asked about marijuana at the scene, it would be a stretch for us to think that his question to Appellant was inquiring about something other than marijuana. Based on these facts, it would be questionable to consider *Ortiz* as distinguishable. Furthermore, despite the State's assertion that Appellant's statement was a spontaneous voluntary response; no testimony or evidence exists to support that. In fact, the statement given by Appellant was the first thing he said to Officer Sutton, and was the result of a direct question addressed to him, a question likely to elicit an incriminating response. *Roquemore v. State*, 60 S.W.3d 862, 868 (Tex.Crim.App.2001) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). (2RR-29).

This case speaks volumes about interaction between police officers and citizens, and the force that officers exhibit in their line of duty. There are no bright line rules or cases supporting the conduct of Officer Sutton, however there are numerous cases highlighting what a reasonable person would believe this type of encounter entails supporting Appellant's position. Under a reasonable person standard, Appellant was in custody and under arrest without probable cause during questioning, and was forced to provide an incriminating response leading to the recovery of marijuana on his person. Accordingly, the trial court erred in not

granting the motion to suppress all evidence obtained as the result of an illegal detention and arrest. *See Wong Sun v. United States,* 371 U.S. 471 (1963).

Respectfully submitted,

*/s/Gary Tabakman*
GARY TABAKMAN
TBA No. 24076065
JPMorgan Chase Bank Building
712 Main Street, 31st Floor
Houston, Texas 77002
Telephone:  (713) 228-8500
Facsimile:  (713) 228-0034

Counsel for Appellant,
ALPHONSON MALONE

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9 of the Texas Rules Appellate Procedure, the undersigned counsel of record certifies that the brief contains 2,905 words.

*/s/Gary Tabakman*
GARY TABAKMAN

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Brief for Appellant was served via e-mail delivery through eFile.TXCourts.gov to Alan Curry Harris County District Attorney's Office 1201 Franklin, Houston, Texas 77002 on this the 30th day of December 2014.

*/s/Gary Tabakman*
GARY TABAKMAN