# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00046-CR

**Daniel Ray Parisher, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT
### NO. 5477, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Daniel Ray Parisher appeals his conviction for the possession of an immediate precursor, pseudoephedrine, with the intent to unlawfully manufacture a controlled substance, to wit:  methamphetamine.  *See* Tex. Health & Safety Code Ann. § 481.124(a)(2) (West Supp. 2008).  Appellant waived trial by jury and entered an "open" plea of guilty in a bench trial.  The trial court assessed his punishment at eleven years in the Institutional Division of the Texas Department of Criminal Justice.

### POINTS OF ERROR

Appellant advances eight points of error, all claiming that the trial court abused its discretion in denying the pretrial motion to suppress evidence for various reasons.[1]

---

[1]  In his initial point of error appellant alleges that the trial court abused its discretion in denying the suppression motion because the trial court improperly placed the burden of proof on appellant during the entire hearing.

# PROCEDURAL HISTORY

The indictment filed on August 4, 2005, alleged in pertinent part that appellant:

---

In the other seven points of error appellant argues that the trial court abused its discretion in denying the motion to suppress when the hearing showed evidence was illegally obtained by the State in violation of the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution because:

(2)    the police officers trespassed onto appellant's private property, peered through a window and "feathered, moved, or opened a door" to the residence;

(3)    the police officers engaged in a coercive and improper "knock and talk" tactic;

(4)    there was a failure by the State to show by clear and convincing evidence that appellant's wife consented to the entry of the officers into the residence;

(5)    appellant's wife was "seized" for Fourth Amendment purposes when the door was opened thereby tainting any consent given;

(6)    appellant, a co-tenant with his wife, did not consent to the warrantless entry;

(7)    appellant and his wife were both illegally "seized" by the officers upon their entry into the house; and

(8)    the officers conducted an improper protective sweep of the residence.

In his points of error as in his brief, appellant never tells us what evidence was "illegally obtained" by the State.

Moreover, appellant has not advanced any argument separately or otherwise claiming greater protection from the state constitution than that afforded by the Fourth Amendment to the federal constitution. Thus, appellant has waived his state constitutional issues. We will not address them. *See Bell v. State*, 90 S.W.3d 301, 305 (Tex. Crim. App. 2002); *Balentine v. State*, 71 S.W.3d 763, 772 n.8 (Tex. Crim. App. 2002); *Hulit v. State*, 982 S.W.2d 431, 436 (Tex. Crim. App. 1998); *Franks v. State*, 241 S.W.3d 135, 141 (Tex. App.—Austin 2007, pet. ref'd).

on or about the 14th day of January 14, 2005, in the County of San Saba and the State of Texas did then and there with intent to unlawfully manufacture a controlled substance, to wit: methamphetamine, possess an immediate percursor, to wit: ephedrine or pseudoephedrine.[2]

Appellant's pretrial motion to suppress evidence was heard by the trial court on March 17, 2006. The trial court denied the motion on August 4, 2006. Upon request, the trial court in open court on September 8, 2006, made findings of facts and conclusions of law. *See State v. Oages*, 210 S.W.3d 643, 644 (Tex. Crim. App. 2006); *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). On May 7, 2007, appellant waived trial by jury and entered an open plea of guilty to the indictment before a different district judge. Appellant judicially confessed in writing to the offense charged—"Possession of certain chemical [pseudoephedrine] with intent to manufacture a controlled substance." The court reporter's record of this guilty plea proceeding, if any, is not in the appellate record. The judicial confession alone is sufficient to satisfy the statutory evidence requirement as to felony guilty pleas before the trial court. *See* Tex. Code Crim. Proc. Ann. art. 1.15 (West 2005); *Dinnery v. State*, 592 S.W.2d 343, 353 (Tex. Crim. App. 1979) (op. on reh'g). If other evidence was introduced, it is not a part of this record. There is certainly no chemical analysis evidence or a showing of any evidence illegally seized or the date thereof.

---

[2] The indictment is endorsed with the label: "Possession of Certain Chemical with Intent to Manufacture a Controlled Substance." This same description of the offense is set forth in the formal judgment of this case.

This guilty plea proceeding, being a unitary trial,[3] was recessed and recalled on October 25, 2007, before the original trial judge, who assessed appellant's punishment at eleven years' imprisonment.

All of appellant's issues turn on the suppression hearing, so we examine the ever-developing law regarding pretrial motions to suppress evidence. *See* Tex. Code Crim. Proc. Ann. art. 28.01(6) (West 2006).

## THE BURDEN OF PROOF

When a defendant seeks to suppress evidence by a pretrial motion on the basis of the Fourth Amendment to the United States Constitution, he, as the movant, bears the burden of producing evidence that defeats the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007); *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). A defendant meets this initial burden of proof by establishing that a search or seizure occurred without a warrant. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002); *Russell*, 717 S.W.2d at 9. At this point, the burden shifts to the State to prove that the search or seizure was reasonable without a warrant under the totality of the circumstances. *Russell*, 717 S.W.2d at 9. If, however, the State introduces or produces evidence of an executed search warrant based on probable cause in its underlying

---

[3] There is no proper bifurcation of a unitary trial on a guilty plea in a felony case before the trial court where a jury trial has been waived. *See Barfield v. State*, 63 S.W.3d 446, 450 (Tex. Crim. App. 2001); *Saldana v. State*, 150 S.W.3d 486, 489 (Tex. App.—Austin 2004, no pet.); 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice And Procedure* § 38.14 (West Supp. 2008).

affidavit, the burden shifts back to the defendant to show the invalidity of the search warrant. *Ford*, 158 S.W.2d at 492; *Russell*, 717 S.W.2d at 9; *see also Davidson v. State*, 249 S.W.3d 709, 717-18 (Tex. App.—Austin 2008, pet. ref'd).

## THE TRIER OF FACT

The trial court is the trier of fact at a pretrial hearing on a motion to suppress evidence. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991). The trial court is free to believe or disbelieve all or any part of a witness's testimony, even if the testimony is not controverted. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

## STANDARD OF REVIEW

We generally review a trial court's ruling on a pretrial suppression motion for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). The trial court's ruling should be upheld so long as it is within the zone of reasonable disagreement. *See Dixon*, 206 S.W.3d at 590; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). This is the rather common standard of review regarding the admissibility of evidence.

When we review a trial court's ruling on a motion to suppress, we give great deference to the trial court's determination of historical facts supported by the record, while we

5

review the application of the law to the facts *de novo*. *Torres v. State*, 182 S.W.3d 899, 902

(Tex. Crim. App. 2005); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State*

*v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327;

*Guzman v. State*, 955 S.W.2d 85, 85-89 (Tex. Crim. App. 1997).[4]

---

[4] The *Guzman* addition to the rather straight forward standard above is described in *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) as follows:

> Appellate courts must give almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. This "deferential standard of review in *Guzman* also applies to a trial court's determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing." Appellate courts also afford the same level of deference to a trial court's ruling on "application of law to fact questions," or "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. The appellate courts review *de novo* "mixed questions of law and fact" that do not depend upon credibility and demeanor.

*Id*. at 673; *see also Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006).

Claiming it to be consistent with the above described standard of review, the Texas Court of Criminal Appeals has recently restated the standard in *State v. Kelly*, 204 S.W.3d 808 (Tex. Crim. App. 2006) by stating:

> In reviewing a trial court's ruling on a motion to suppress, an appellate court must view the evidence in the light most favorable to the trial court's ruling. When a trial court makes explicit fact findings, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings. The appellate court then reviews the trial court's legal ruling *de novo* unless the trial court's supported-by-the record explicit fact findings are also dispositive of the legal ruling.

> The appellate standard of review is very similar when the record is silent on the reasons for the trial court's ruling or when the trial court makes no explicit fact findings and neither party has timely requested findings and conclusions from the trial court. Under these circumstances, the appellate court implies the necessary fact findings that would support the trial court's ruling if the evidence (viewed in the light

6

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendiarz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003); *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

## A SPECIALIZED OBJECTION

A pretrial motion to suppress evidence under article 28.01(6)[5] is nothing more than a specialized objection to the admissibility of evidence. *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981). Therefore, it must meet the specificity requirement for an objection. Tex. R. App. P. 33.1(a)(1)(A); *Flores v. State*, 129 S.W.3d 169, 171 (Tex. App.—Corpus Christi 2004, no pet.); *Carroll v. State*, 911 S.W.2d 210, 218 (Tex. App.—Austin 1995, no pet.); *Mayfield v. State*, 800 S.W.2d 932, 935 (Tex. App.—San Antonio 1990, no pet.).[6]

---

most favorable to the trial court's ruling) supports these implied fact findings. The appellate court then reviews the trial court's legal ruling *de novo* unless the supported-by-the-record implied fact findings are also dispositive of the legal ruling.

*Id*. at 818 (citations omitted); *see also id*. at 819, n.21. For a general discussion of the standard, *see Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

[5] Tex. Code Crim. Proc. Ann. art. 28.01(6) (West 2006).

[6] An objection must be timely made with sufficient specificity to make the trial court aware of the complaint. Tex. R. App. P. 33.1(a)(1)(A); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Morrison v. State*, 71 S.W.3d 821, 826 (Tex. App.—Corpus Christi 2002, no pet.). A pretrial motion to suppress evidence must meet all the requirements of Rule 33.1(a)(1)(A) of the Texas Rules of Appellate Procedure. *See Krause v. State*, 243 S.W.3d 95, 102 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

In *Martinez v. State*, 17 S.W.3d 677 (Tex. Crim. App. 2000), the Texas Court of Criminal Appeals recognized the specificity requirement as it applied to suppression motions. There, the court held that the defendant had procedurally defaulted the issues he raised on appeal because the claims had not been made in his motion to suppress nor had he advanced any argument on those issues in the trial court. *Id*. at 682-83. It is commonly required that the motion to suppress evidence must specify with particularity the grounds upon which the motion is based, and the failure to assert a particular ground operates as a waiver of the right to challenge the admissibility of the evidence on that ground. W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.2(a) (4th ed. 2004). *Martinez* was cited as an illustration. *Id*. Professor LaFave suggested that attorneys should avoid "shot gun" motions to suppress with conclusory language such as "illegal arrest" and "violation of constitutional rights," and "specify exactly why arrests or resulting searches are invalid." *Id*.

In *Swain*, 181 S.W.3d at 365, the court held that because the allegations in the suppression motion were global in nature and contained little more than citation to constitutional and statutory provisions, they were not sufficiently specific to preserve the argument later made on appeal. S*ee also Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding that "generic" allegations in suppression motion were not specific enough to preserve argument advanced for appellate review).[7]

---

[7] To preserve error for appellate review, the point of error must comport with the objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Tejos v. State*, 243 S.W.3d 30, 48 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). A trial objection based on one legal theory may not be used to support a different legal theory on appeal. *Delamora v . State*, 128 S.W.3d 344, 363 n.11 (Tex. App.—Austin 2004, pet. ref'd).

In his dissent in *Torres v. State*, Judge Holcomb noted that the defendant had filed a boiler plate pretrial motion to suppress "any and all evidence seized or obtained as a result of illegal acts." 182 S.W.3d at 904. He observed that the motion failed to specify what evidence the defendant wanted to suppress asserting only that the evidence in question was the "fruit" of a warrantless arrest, citing the Fourth Amendment. *Id*. Judge Holcomb believed that the failure to specify what evidence the defendant wanted suppressed would have justified the trial court in denying the suppression motion on that basis alone. *Id*. at 904 n.3 (citing *Johnson v. State*, 548 S.W.2d 700, 706 (Tex. Crim. App. 1977) (appellate court perceives no error in the trial court's denial of motion to suppress "[s]ince the appellant fails to state what evidence, if any, was obtained as a result of the alleged unlawful arrest. . . .")).

Appellant's motion to suppress evidence is a boiler plate motion in general and conclusory language. It does not specify what particular evidence he wanted suppressed. Citing constitutional and statutory provisions, appellant alleged a search of his residence by virtue of a warrant, a warrantless search (apparently of his house), and his unlawful and warrantless arrest. He wanted "any and all tangible evidence," "evidence that may be used at trial," and "evidence" resulting from his "arrest" to be suppressed. Undoubtedly, the trial court could have properly denied the motion for the lack of specificity alone. *Johnson*, 548 S.W.2d at 706.

Nevertheless, the trial court conducted a hearing, and we must look to the record to determine what argument or issues, if any, were raised showing a violation of the Fourth Amendment.

9

## SUPPRESSION HEARING

At the commencement of the hearing on appellant's motion to suppress evidence, it appears clear that the parties understood that appellant was complaining of evidence obtained in violation of the Fourth Amendment by (1) a search of his residence by virtue of a search warrant, (2) a warrantless search, and (3) appellant's unlawful arrest. Appellant abandoned any allegations in the motion as to involuntary statements.

At the outset, appellant's counsel suggested a stipulation as to some of the facts, but the State rejected the suggestion, claiming that it would shift the burden of proof. The trial court then made clear that the initial burden of going forward with the evidence at the hearing would be on appellant, the movant. Appellant called only two witnesses, and their testimony was limited to the warrantless entry into appellant's residence. For whatever reason, neither party offered testimony as to any search by virtue of a search warrant.

The suppression hearing reflects that on some undisclosed night in January 2005,[8] Officer Allen Brown of the City of San Saba received a telephone tip from an unidentified employee of the Super S grocery in San Saba about suspicious activity by two individuals who had parked a pickup truck at the store. Brown was informed that one individual came into the store "and bought several items that were suspicious," and then the other person entered the store and bought "nearly the same items." The nature of the items was not revealed. Before the pickup truck left the store's

---

[8] Both parties assert in their briefs that it was January 14, 2005, but the record does not support these assertions. Officer Allen Brown gave no date or time in his testimony. Appellant simply stated that the incident occurred about nine o'clock on a night in January 2005. We glean elsewhere from the record that it was possibly January 13, 2005.

10

parking lot, its license plate was noted and given to Officer Brown. His investigation showed that the truck was registered to Sandra and Daniel Parisher.

Officer Brown contacted Deputy Sheriff David Jenkins of San Saba County who knew where the Parishers lived. The officers had no arrest or search warrant, but decided to use the "knock and talk" approach. They drove from San Saba to Cherokee, and then further on a county road, turning onto the unimproved road or drive leading up to the Parishers' rural home. They had driven approximately thirty miles. Officer Brown recalled that the gate was open to the Parishers' property and that he did not see any "no trespassing signs." Brown observed that it was nighttime.

The officers parked their vehicle and approached the house and its front door. There was no testimony about barriers or fences surrounding the house. Officer Brown commenced knocking on the front door while Deputy Jenkins "covered" him from the side of the door from which position he could see through a window a man other than Parisher. The door appeared "loose,"[9] so Officer Brown knocked to the side of the door. When Sandra Parisher answered the knock and opened the door, Officer Brown identified himself and Deputy Jenkins as officers and asked to come in and "talk about some information." He stated that Sandra Parisher looked at her husband, "stuttered for a second," then said, "yes, you can" or "come on in." Officer Brown denied forcing his way into the house or threatening anyone in any way. His testimony was that Mrs. Parisher voluntarily consented to their entry into the residence.

---

[9] Appellant in his testimony acknowledged that the front door was in need of repair—a hinge needed to be replaced or repaired.

Officer Brown stated that after he and Deputy Jenkins were three or four feet inside the dining room with Sandra Parisher's consent, he was able to see in "plain view" on a table in the next room, items such as "multiple mason jars, some open, containing things, alcohol, clear—clear tubing material, multiple coffee filters, matches which had been cut with the heads cut off of them and latex gloves." Later, Officer Brown, who had been a peace officer for almost ten years and had handled narcotic investigations, described the items seen as "multiple items consistent with paraphernalia used to manufacture methamphetamine." Again describing the items Officer Brown stated that the "cut matches, the mason jars, the way they were laid at the table with working tools, the coffee filters spread out on the coffee table like they were—those items literally jump out at you when they're in the order that they're in."[10] Other than Officer Brown's personal observations, there was no testimony of a search or seizure of any item. After the observations, Officer Brown testified that the officers made a protective sweep of the house because another man had been seen in the house before the officers entered. Sandra Parisher first denied that anyone else was present, then acknowledged a "friend" was in the house. The officers found a man named Napoles on the commode in the bathroom with undescribed items in the commode. Appellant, his wife, and Napoles were detained at the time, but what action was taken thereafter with regards to appellant and others who were detained is not revealed. There is nothing in the record to show any search or pat-down of appellant and the other individuals or that any items of evidence were obtained. Officer Brown testified that he telephoned the narcotic officers, but he made clear that he was not

_____

[10] The items described by Officer Brown were on the dining room table and a coffee table. Photographs of both tables were introduced as the items described.

present if any search by warrant took place. What action, if any, was taken with regard to the items personally observed by Officer Brown is not reflected.

After Officer Brown's testimony, appellant urged that the burden of proof had shifted to the State, but the trial court ruled no search had been established. Appellant then testified that about 9:00 p.m. on a night in January 2005, there was a knock at the door of his small rural home. He thought it was a joke when a voice stated that the visitors were "Officer Brown and Deputy Jenkins." As appellant recalled, Officer Brown entered the house before appellant's wife could open the door, stating that it was cold outside, and asking to come in. Appellant related that neither he nor his wife gave consent for entry into their home. Appellant said that Deputy Jenkins entered behind Officer Brown with his pistol drawn and placed the pistol near appellant's head.

Appellant took the position that the officers could not see into the next room from their vantage point in the living room. Appellant was not asked about the items that the officers claimed to have seen in "plain view." Questions were asked about cattle guards, gates, and signs. Appellant testified that there were several "no trespassing signs" on the approach to his property, that he left the gate open that night so Napoles, a friend, could enter the property, and that neighbors came to the front door from time to time. Appellant testified that the acreage upon which the house was located was partially in San Saba county and partially in Llano county, and his mailing address had been recently changed from Llano to Cherokee, Texas. Appellant did not testify about any subsequent search by warrant.

Officer Brown was briefly recalled as a witness. At the conclusion of his testimony, the trial court inquired if the State had evidence to offer. When the State indicated it

13

had none to offer, the trial court called on appellant's counsel for argument. There were no formal announcements of "resting" or "closing." Except for brief arguments, the suppression hearing terminated. No search warrant or underlying affidavit were marked for identification, offered, or introduced into evidence. There was no testimony about any search by virtue of a warrant or that there were any "fruits" of any such search if a warrant was executed. The suppression hearing furnishes the only evidentiary basis for appellant's contentions.

## FINDINGS AND CONCLUSIONS

The suppression hearing was held on March 17, 2006. The motion to suppress was denied on August 4, 2006. The trial court filed its findings of fact and conclusions of law on September 6, 2006, as follows:

(1)     The Court finds that the officers did not observe any "no trespassing" signs or any other notice of privacy. The Court finds that no such signs were readily visible.[11] The Court concludes that no trespass occurred.

(2)     The Court finds that Sandra Parisher had an equal right of control over the subject premises.

(3)     The Court finds that Sandra Parisher voluntarily admitted the officers into the residence.

(4)     The Court finds that evidence was observed in plain view upon the officers' entry into the premises.

(5)     The Court finds that a third subject had been observed but was absent from the front room of the house upon the officers' entry.

---

[11] The trial court later in open court orally amended its findings to reflect that there were not any "no trespassing" signs reasonably likely to come to the attention of the officers. *See* Tex. Penal Code Ann. § 30.05(b)(2)(C) (West Supp. 2008).

14

(6)     The Court concludes that therefore a safety sweep of the house was justified which yielded the third subject and led to additional contraband which the Court finds was in the plain view of the officers on the further sweep of the house.

(7)     The Court finds that the Parisher residence is located at least in part in San Saba County.

(8)     The Court finds that probable cause existed for issuance of the search warrant by Judge Leslie Dawson.

(9)     The Court finds that there was no locked gate or other exclusion indicia indicating an expectation of privacy beyond that which would allow the officers to approach the house.

There were no objections to these findings and conclusions. Appellant made no request for additional findings. We observe, however, that there is no support in this record for the finding that in their protective sweep, the officers saw "additional contraband." Further, as noted, there is no evidence of a search warrant or its underlying affidavit being introduced or being a part of this record. The trial court's finding and conclusion that probable cause existed for the issuance of a search warrant is not supported by this record. We cannot give credence to findings and conclusions as to either "additional contraband" or the existence of "probable cause for the issuance of a search warrant."

The State has attached to its brief an affidavit and search warrant issued at 1:15 a.m. on January 14, 2005. There is nothing to show that the search warrant was ever executed and no testimony that any items were found and seized. Moreover, affidavits, documents, exhibits, and statements attached to appellate briefs are not evidence and cannot be considered by an appellate court on review. *Cook v. State*, 741 S.W.2d 928, 938-39 (Tex. Crim. App. 1987); *Webber v. State*,

15

21 S.W.3d 726, 731 (Tex. App.—Austin 2000, pet. ref'd); *Miranda v. State*, 813 S.W.2d 724, 738 (Tex. App.—San Antonio 1991, pet. ref'd).  Further, assertions in briefs not supported by the record cannot be accepted as fact.  *Vanderbilt v. State*, 629 S.W.2d 709, 717 (Tex. Crim. App. 1981).[12] Moveover, the simple fact that there was "probable cause" for the issuance of a search warrant is meaningless here without a showing that the warrant was actually issued, executed, and that certain "fruits" were thereby obtained.

Because the motion to suppress was not relitigated by the parties during trial, our review of the trial court's ruling is limited to the evidence that was before the court during the pretrial suppression hearing.  *See Rangel v. State*, 250 S.W.3d 96, 97-98 (Tex. Crim. App. 2008); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996) ("[I]n determining whether a trial court's decision is supported by the record, we generally consider only the evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.").  "Perhaps the most basic characteristic of the appellate record is that it is limited to matters before the trial court." 43A George E. Dix & Robert O. Dawson, *Texas Practice:  Criminal Practice And Procedure* § 43.306 (2d ed. 2001).

---

[12] The search warrant and affidavit attached to the State's brief were never marked for identification, offered or introduced in evidence, or shown to have been placed in the possession of the clerk or court reporter and was not designated as a part of the appellate record.

## THE PLAIN VIEW DOCTRINE

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV; *Minnesota v. Carter*, 525 U.S. 83, 88 (1979). The Fourth Amendment protects people and not places. *Long v. State*, 532 S.W.2d 591, 594 (Tex. Crim. App. 1975).

A search conducted without a warrant issued upon probable cause is *per se* unreasonable subject only to a few specifically established and well-delineated exceptions. *See Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000); *Duhig v. State*, 171 S.W.3d 631, 635 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). One of those exceptions is the "plain view" doctrine. *Texas v. Brown*, 460 U.S. 730, 736 (1983). Although commonly classified as an exception to the warrant requirement, the "plain view" doctrine is not truly an exception because neither observation nor the seizure of property in plain view involves an invasion of privacy and is presumptively reasonable. *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000); *see also Horton v. California*, 496 U.S. 128, 135-36 (1990). It is not a search to observe that which is open to view. *Long*, 532 S.W.2d at 594. Observing and even seizing items in plain view do not run afoul of the Fourth Amendment. *Walter*, 28 S.W.3d at 541.

The "plain view" doctrine requires only that (1) law enforcement officials have a right to be where they are, and (2) it is immediately apparent that the item observed or seized may constitute evidence, that is, there is probable cause to associate the item with criminal activity.[13]

---

[13] "[P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief, that certain items may be contraband or stolen property or useful as evidence of a crime." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (citations omitted).

*Walter*, 28 S.W.3d at 541; *Ramos v. State*, 934 S.W.2d 358, 365 (Tex. Crim. App. 1996); *Arrick v. State*, 107 S.W.3d 710, 719 (Tex. App.—Austin 2003, pet. ref'd).

In determining whether an officer had the right to be where he was, the Supreme Court requires that the officer not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. *Horton*, 496 U.S. at 136; *see Walter*, 28 S.W.3d at 541.

Absent express orders from the person in possession of the property not to trespass, anyone, including a law-enforcement officer, has the right to approach the door of a residence and knock on the door. *Cornealius v. State*, 900 S.W.2d 731, 733-34 (Tex. Crim. App. 1995); *Duhig*, 171 S.W.3d at 635. Appellant contends that on the occasion in question the officers unlawfully trespassed on his property. He argues that the officers did not have consent to enter upon the property when they had notice that entry was forbidden by "no trespassing signs" posted on the property. *See* Tex. Penal Code Ann. § 30.05(a)(1), (b)(2)(C) (West Supp. 2008).[14] The trial court found that the officers did not observe any "no trespassing signs or any other notice of privacy and that "no such signs were readily visible" or were reasonably likely to come to the attention of the officers.[15] The trial court further found there were no locked gates "or other indicia indicating an expectation of privacy." Appellant acknowledged that he had purposely left the gate open on the night in question. There was also evidence that neighbors visited and used the drive to approach appellant's house. There was no evidence of any barrier or fence that the officers had to cross. The

---

[14] The current code is cited for convenience. The law in the provisions cited has not changed since January 2005.

[15] This latter statement came as an oral amendment to the findings of fact.

trial court concluded that the officers did not trespass onto the property. We agree that the record supports the trial court's findings. The officers had a right to approach the front door to contact the Parishers. *Duhig*, 171 S.W.3d at 635.

While at or approaching the front door, the officers from their vantage point were free to observe evidence or things in plain view. *Id*. at 636. They saw through a front window of the Parishers' house several individuals in the living room. This "plain view" observation involved no invasion of privacy. *Id*. What a person knowingly exposes to the public, even in his own home, is not a search subject to Fourth Amendment protection. *Id*. A search implies a prying into hidden places for that which is contraband. *Id*. When a police officer on legitimate business simply walks up to a door and knocks, he visits the house in the same lawful way that a private citizen does. The ensuing "knock and talk" does not implicate the Fourth Amendment or its exceptions because no search or seizure occurs. *United States v. Walters*, 529 F. Supp. 2d 628, 638 (E.D. Tex. 2007) (citing *United States v. Thomas*, 120 F.3d 564, 571 (5th Cir. 1997)).

Here, the suppression hearing testimony reflected a conflict as to Sandra Parisher's consent to enter the house. Officer Brown stated that Sandra Parisher answered his knock and, after looking at her husband, invited the officers into the house in response to Officer Brown's request. The officer testified that no force was used and that no one was threatened. Appellant, however, stated that neither he nor his wife gave consent for the officers to enter the house, and that Deputy Jenkins came in with a pistol pointed at him. The trial court, as the trier of fact, found that Sandra Parisher had equal control of the premises and voluntarily admitted the officers. The trial court believed Officer Brown and not the appellant.

When the officers were legally three or four feet in the living room, Officer Brown observed, in plain view, articles that he believed, based on his experience, were evidence of criminal activity in the manufacture of methamphetamine. Thereafter, he detained the Parishers.

It is apparent from the record that Officer Brown had learned that another man was in the house. Upon inquiry, Sandra Parisher first denied anyone else was present, but then recanted and said a "friend" was there. Officer Brown did not know the identity of the man and did not know if he was armed or dangerous, or whether he might destroy evidence. Officer Brown had a reasonable belief that a protective sweep was necessary for the safety of the officers. The sweep was brief and cursory and resulted in the discovery of the other man in the bathroom. *See Ramirez v. State*, 105 S.W.3d 730, 742 (Tex. App.—Austin 2003, no pet.). The trial court found the protective sweep was justified. The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-house arrest when the officer possesses a reasonable belief that the area to be swept harbors an individual posing a danger to those on the current scene. *Maryland v. Buie*, 494 U.S. 325, 337 (1990); *Reasor*, 12 S.W.3d at 816; *see also* 40 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice And Procedure* § 12.21 (2d ed. 2001).

We grant deference to those factual findings of the trial court that are supported by the record, and we agree, after a *de novo* review with the trial court's legal conclusions.

## THE INITIAL POINT

In his first point of error, appellant complains that the trial court abused its discretion in denying the motion to suppress evidence because it improperly placed the burden on appellant for "warrantless entry and search of appellant's residence."

At no time did appellant object to having the burden of proof or persuasion placed on him so as to preserve any error for review. *See* Tex. R. App. P. 33.1(a)(1)(A); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). We have previously discussed the burden of proof in suppression hearings. The trial court properly placed the initial burden upon appellant, the movant. After Officer Brown's original testimony, appellant inquired if the burden had shifted to the State. The trial court pointed out that no search or other violation of the Fourth Amendment had been shown at that point, and that the initial burden to defeat the presumption of proper police conduct remained with appellant. No further mention of "burden" was made.

The hearing encompassed only the warrantless entry into appellant's house with his wife's consent as found by the trial court. The testimony did not show that any items of evidence were ever obtained, seized, or taken into custody by the State. Officer Brown's mere observation, "in plain view," of certain items was not a "search" in violation of the Fourth Amendment. *Walter*, 28 S.W.3d at 541. The first point of error is overruled.

**POINTS OF ERROR TWO THROUGH EIGHT**

In points of error two through eight, appellant's premise in each point of error is not supported by the record before this Court. In each point, appellant urges that the trial court abused its discretion in denying the motion to suppress evidence because the State obtained evidence in violation of the Fourth Amendment, giving various reasons in each point. The record does not reflect that any items of evidence were obtained, seized, or taken into custody by the State from appellant's residence or from his person. Further, Officer Brown's observation of certain items that he said were in plain view was not a violation of the Fourth Amendment, *Horton*, 496 U.S.

21

at 135-36, and this would have been true even if the items had been seized, *id*. at 136; *Walter*, 28 S.W.3d at 541. For this reason alone, points of error two through eight are without merit.

Points of error two, three, four and eight involving a claimed trespass, an improper "knock and talk" tactic, a lack of consent by Sandra Parisher, and an unwarranted protective sweep were considered under our previous discussion of the "plain-view" doctrine.

Points of error five through seven involve claims that Sandra Parisher was "seized" after the door was opened and that this tainted her consent, that both Parishers were "seized," and that the State failed to show appellant's consent to the entry as he was a co-tenant and was present at the time. These contentions were not set forth in appellant's motion to suppress evidence nor were they advanced in the argument at the suppression hearing. By not raising these contentions until his appeal, appellant has procedurally defaulted these claims. *See Martinez*, 17 S.W.3d at 683.[16] To preserve error on appeal, the point of error must comport with the objection made at trial. *See Swain*, 181 S.W.3d at 367; *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). A trial objection based on one legal theory may not be used to support a different legal theory on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); *Delamora v. State*, 128 S.W.3d 344, 363 n.11 (Tex. App.—Austin 2004, pet. ref'd). Points of error two through eight are overruled.

---

[16] It is noted that appellant does not in either his suppression motion or his appellate brief specify, point out, or list what evidence he is claiming should have been suppressed.

The trial court did not abuse its discretion in overruling the motion to suppress evidence. The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Waldrop, Henson and Onion*

Affirmed

Filed:   June 5, 2009

Do Not Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).