Opinion issued May 27, 2010

                                                                        

 

 

 

 

 



 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00569-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



TROY DONNELL HIPPOLITE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 339th District Court

Harris County, Texas

Trial Court Cause No. 1212950

 

 



MEMORANDUM OPINION

          A
jury convicted Troy Donnell Hippolite of the felony offense of possession of a
controlled substance, cocaine, weighing less than one gram.  See
Tex. Health & Safety Code Ann.
§§ 481.102(3)(D), 481.115(b) (Vernon Supp. 2009).  After Hippolite pleaded true to the
allegations in two enhancement paragraphs, the trial court assessed punishment
at four years’ confinement and a $5000 fine. 
On appeal, Hippolite contends that the trial court abused its discretion
in denying his motion to suppress evidence because:  (1) the arresting officer lacked probable
cause to stop Hippolite’s vehicle and his testimony that Hippolite committed a
traffic violation was not credible; and (2) Hippolite made a statement
regarding the cocaine before the officer gave Hippolite the Miranda warnings.  We hold that (1) the trial court did not
abuse its discretion in determining that the officer’s testimony was credible and
he had probable cause to stop Hippolite; and (2) Hippolite made his
statement voluntarily and not in response to custodial interrogation.  We therefore affirm.

Background

In January 2009, Houston Police
Department Officer Ashraf parked his patrol car in the parking lot of a Citgo station
to observe the intersection of Kingspoint Road and Kleckley Drive, located in
the “high crime, high narcotic activity” area of Almeda Mall in southeast
Houston.  Ashraf parked at an angle in
the parking lot, approximately twenty feet from the stop sign, so he could view
the intersection.  Ashraf testified that
his car was not hidden, but was located in plain view in the parking lot.  Five to ten minutes after arriving at the
Citgo, Ashraf saw Hippolite fail to make a complete stop and fail to use his
turn signal before turning right onto Kingspoint.  Ashraf estimated that ten cars passed by his
patrol car and stopped at the intersection before Hippolite, and all of those
cars properly stopped and properly signaled if they turned right.  Aside from Hippolite’s failure to stop
properly and use his turn signal, nothing about his car or manner of driving
caught Ashraf’s attention or made him want to single Hippolite out for further
investigation.

Ashraf followed Hippolite for two blocks
before pulling him over.  According to
Ashraf, Hippolite was “very aggressive, non-cooperative, [and] defensive,” and
he repeatedly demanded to know why Ashraf pulled him over.  Hippolite argued with Ashraf, stating that he
had completely stopped and had used his turn signal.  Ashraf arrested Hippolite for failing to use
his turn signal and asked whether he had any contraband on him or in his
car.  After Hippolite responded that he
did not have any contraband, Ashraf searched Hippolite and discovered a “lump”
in Hippolite’s pants pocket.  Ashraf removed
the lump and identified the substance as a crack-cocaine rock.  Hippolite then stated that he received the rock
from a friend in exchange for giving that friend a ride.  On cross-examination, Ashraf acknowledged
that he had not read Hippolite his Miranda
warnings at the time Hippolite informed Ashraf of the rock’s origins.  According to Ashraf, after arresting
Hippolite, the only question he asked was whether Hippolite had any contraband
on himself or in his car, which Hippolite denied.  Ashraf testified on re-cross that he might
have said “[w]hat’s this?” but only after he obtained the crack rock.  The only question he asked Hippolite was
whether he had any contraband on himself or in his car prior to the search, and
Hippolite answered that question by stating that he did not have any
contraband.

Hippolite moved to suppress the
cocaine and “[a]ll statements made, whether oral or written, and such other
actions of the Defendant, if any, at the time of and subsequent to the stop,
arrest, and search.”  The trial court
carried the motion with the trial.  In
the motion, Hippolite contended that Ashraf lacked probable cause to conduct
the traffic stop.  At trial, Hippolite specified
that Ashraf’s testimony on observing Hippolite’s failure to use his turn signal
“lack[ed] credibility.”  The trial court
denied the motion and admitted both the cocaine and Hippolite’s statement
regarding how he obtained it.

 

Discussion

Standard of Review

          We
review a trial court’s ruling on a motion to suppress for abuse of discretion.  Shepherd
v. State, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).  We view the evidence in the light most
favorable to the trial court’s ruling.  Wiede v. State, 214 S.W.3d 17, 24 (Tex.
Crim. App. 2007) (quoting State v. Kelly,
204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). 
The trial court is the “sole trier of fact and judge of credibility of
the witnesses and the weight to be given to their testimony.”  St.
George v. State, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).  The trial court may choose to believe or
disbelieve any part or all of a witness’s testimony.  Green
v. State, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996).  We defer to a trial court’s express or
implied determination of historical facts, as well as to its application of law
to fact questions if those questions turn on the evaluation of credibility and
demeanor.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We will sustain the trial court’s ruling if
it is reasonably supported by the record and correct on any theory of law applicable
to the case.  Laney v. State, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

 

 

Probable Cause to Conduct Traffic Stop

          Hippolite
contends that the trial court abused its discretion by denying his motion to
suppress evidence because the court’s determination that Officer Ashraf had
probable cause to arrest Hippolite for failing to use his turn signal was
“based on a flawed assessment of [Ashraf’s] credibility.”  The Transportation Code provides that a
person commits a traffic violation if the person does not signal continuously
for at least 100 feet before turning.  Tex. Transp. Code Ann.
§ 545.104(b) (Vernon 1999).  If a
police officer observes a person committing a traffic violation, the officer
may arrest the person without a warrant. 
Id. § 543.001; Tex. Code Crim. Proc. Ann. art.
14.01(a) (Vernon 2005); Dogay v. State,
101 S.W.3d 614, 618 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (“[A] police
officer may stop and arrest a driver for a traffic violation and may search the
car and the area of the car incident to the arrest.”).  Probable cause exists if the officer has a
reasonable belief that, based on facts and circumstances within the officer’s
personal knowledge or of which the officer has reasonably trustworthy
information, the defendant committed an offense.  Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); see also Zervos v. State, 15 S.W.3d 146, 151 (Tex. App.—Texarkana
2000, pet. ref’d) (“If an officer has a reasonable basis for suspecting that a
person has committed a traffic offense, the officer may legally initiate a
traffic stop.”).

          In
contending that Ashraf lacked probable cause to stop Hippolite’s car and was
not a credible witness, Hippolite emphasizes Ashraf’s testimony that he parked
his marked patrol car in plain view of the street and suggests that it is therefore
“highly unlikely” that any person would commit a traffic violation in front of
such a “plainly visible” officer. 
Further, Hippolite notes that Ashraf’s statement that the ten previous
vehicles he observed at the intersection all properly stopped and signaled if
they turned right “is subject to considerable common sense skepticism given
Houstonians’ general failure to signal their lane changes.”  Hippolite’s aggressive demeanor, according to
Hippolite, indicates that he had complied with the traffic laws.  Hippolite also contends that Ashraf was
biased against him and “embellished” his trial testimony by testifying that
Hippolite (1) failed to properly stop, (2) admitted to drinking a few beers
before driving, and (3) had neither a driver’s license nor proof of insurance.
 Ashraf included none of this information
in his police report.

Even considering “Houstonians’
general failure to signal their lane changes,” it is reasonable to believe that
the ten drivers who preceded Hippolite saw Ashraf’s marked patrol car observing
the intersection and took care to not “commit a traffic violation in front of
[a plainly visible] officer.”  Ashraf testified
that, although he observed Hippolite’s “rolling” stop, he considered the turn
signal violation to be the traffic offense on which he based the stop.  Ashraf offered two explanations for his
failure to include the information regarding Hippolite’s improper stop, alcohol
consumption, and lack of a driver’s license and insurance in his police
report:  (1) mere oversight, and (2) he
already had a strong possession case against Hippolite.

In denying Hippolite’s motion to
suppress evidence, the trial court impliedly found that Ashraf’s testimony was
credible and he had probable cause to believe that Hippolite committed a
traffic offense.  Ashraf repeatedly
testified that he observed Hippolite fail to use his turn signal.  The record therefore supports the trial
court’s determination that Ashraf had probable cause to stop Hippolite.  See Guzman,
955 S.W.2d at 89 (stating that we defer to the trial court’s evaluation of the
credibility and demeanor of the witness).

Hippolite cites the Court of Criminal
Appeals’ decision in State v. Dixon
for the proposition that Ashraf’s testimony regarding Hippolite’s failure to
use his turn signal in a designated right-turn-only lane is not credible and
deserves no deference.  See 206 S.W.3d 587, 590 (Tex. Crim. App.
2006).  In Dixon, the arresting officers observed Dixon make a right turn from
a designated right-turn-only lane without signaling, followed Dixon for over a
mile, observed him make a left turn from a designated left-turn-only lane
without signaling, followed Dixon for another mile, pulled him over and
discovered contraband in the ensuing search. 
Id. at 588.  The trial court granted Dixon’s motion to suppress
evidence.  Id.  The Court of Criminal
Appeals noted that “the trial court did not believe the officers’ allegations
that they pulled [Dixon] over because he committed a traffic offense.”  Id.
at 591.  In contrast to the trial judge’s
disbelief of the officer’s testimony in Dixon,
the trial court here believed Officer Ashraf, as demonstrated by its denial of
the motion to suppress.  We hold that the
record supports the trial court’s decision, and therefore the court did not
abuse its discretion by denying Hippolite’s motion to suppress the cocaine.

Statement Made Before Miranda Warnings

          Hippolite
further contends that the trial court abused its discretion by refusing to
suppress Hippolite’s statement that he had obtained the crack-cocaine from a
friend, because he made this statement before Officer Ashraf informed Hippolite
of his Miranda rights.  Miranda
prohibits the State from using statements made by the defendant during
custodial interrogation, unless the State demonstrates that, before making the
statement, the police informed the defendant of certain rights.  Miranda
v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966); see also Tex. Code Crim. Proc. Ann. art. 38.22 §§ 2, 3 (Vernon 2005).  The Supreme Court defined “custodial
interrogation” as “questioning initiated by law enforcement officers after a
person has been taken into custody or otherwise deprived of his freedom of
action in any significant way.”  Miranda, 384 U.S. at 444, 86 S. Ct. at
1612.  “Interrogation” refers “not only
to express questioning, but also to any words or actions on the part of the
police (other than those normally attendant to arrest and custody) that the
police should know are reasonably likely to elicit an incriminating response
from the suspect.”  Rhode Island v. Innis, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689
(1980).  Similarly, article 38.22 does
not preclude the admission of statements made by the defendant that do not stem
from custodial interrogation.  Tex. Code Crim. Proc. Ann. art. 38.22
§ 5.

          The
Fifth Amendment does not bar “[v]olunteered statements of any kind.”  Miranda,
384 U.S. at 478, 86 S. Ct. at 1630; Innis,
446 U.S. at 299–300, 100 S. Ct. at 1689 (“Any statement given freely and voluntarily
without any compelling influences is, of course, admissible in evidence.”); see also Galloway v. State, 778 S.W.2d
110, 112 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (“Article 38.22
§ 5 specifically exempts . . . all voluntary
statements, whether or not they result from custodial interrogation.”).  If the officer does not “solicit the comment”
from the defendant and does not “do anything designed to elicit a response,” no
interrogation exists, and the officer’s failure to give Miranda warnings before the statement does not violate the Fifth
Amendment.  Cooks v. State, 5 S.W.3d 292, 298 (Tex. App.—Houston [14th Dist.]
1999, no pet.); see also Dossett v. State,
216 S.W.3d 7, 24 (Tex. App.—San Antonio 2006, pet. ref’d) (“[S]pontaneous,
volunteered statements not made in response to interrogation are admissible,
whether or not the defendant is in custody.”). 
The Austin Court of Appeals has noted that “[v]oluntary statements
generally do not occur in response to a direct question from a police officer.  That the suspect was neither expressly nor
implicitly questioned by police officers at the time the statement was made
often determines the voluntariness of a statement.”  Ramirez
v. State, 105 S.W.3d 730, 741 (Tex. App.—Austin 2003, no pet.).  In Ramirez,
the officer informed Ramirez that he could see drug paraphernalia and residue
in the garage and asked Ramirez, before giving the Miranda warnings, whether there was “anything else [the officer is]
going to find in there that’s illegal, any more marijuana?”  Id.
at 736.  Ramirez paused, but when the
officer began walking into the garage, he responded that “there’s some pot in
the red cooler.”  Id.  The Austin Court of
Appeals held that, despite Ramirez’s pause, his statement “directly responded
to an inquiry from [the officer].”  Id. at 742.  As a result, Ramirez’s statement was a
product of custodial interrogation, and because the officer had not given
Ramirez his Miranda warnings, the
statement was inadmissible.  Id.

          Unlike
the defendant in Ramirez, who made
the incriminating statement in direct response to a question from the arresting
officer, Hippolite made his admission unprompted and unsolicited.  Officer Ashraf arrested Hippolite, placed him
in custody for failing to use his turn signal, and did not read the Miranda warnings.  As he handcuffed Hippolite, Ashraf asked
whether Hippolite had any contraband on himself or in his car, and Hippolite
responded that he did not.  During the
search, Ashraf discovered a lump in Hippolite’s pocket.  After Ashraf pulled the crack-cocaine out of the
pocket, Hippolite immediately stated that he got the rock in exchange for
giving a friend a ride.  Ashraf
repeatedly testified that he did not ask any questions to prompt this
admission.  Hippolite already had responded
to Ashraf’s earlier inquiry regarding the presence of contraband; his admission
did not respond to Ashraf’s earlier question, but instead sought to explain the
presence of cocaine in his pocket.  We
hold that the trial court reasonably could have concluded that Hippolite’s
statement was not in response to an inquiry from Ashraf, and thus was not a
product of custodial interrogation.  See id. 
We therefore hold that the trial court did not abuse its discretion in
denying Hippolite’s motion to suppress the statement.

Conclusion

We hold that the record supports the
trial court’s implied determination that Officer Ashraf had probable cause to
believe that Hippolite committed a traffic offense, and thus the trial court
did not abuse its discretion by denying Hippolite’s motion to suppress the
cocaine.  We further hold that the trial
court did not abuse its discretion by denying Hippolite’s motion to suppress his
statement about obtaining the cocaine from a friend.  We affirm the judgment of the trial court.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Sharp.

Do Not Publish.  Tex.
R. App. P. 47.2(b).